**LANDMAN, Superintendent of Five Civilized Tribes, v. COMMISSIONER OF INTERNAL REVENUE.**

No. 2284.

Circuit Court of Appeals, Tenth Circuit.

Nov. 11, 1941.

Huston Thompson, of Washington, D. C. (Oscar P. Mast, of Washington, D. C., on the brief), for petitioner.

Bernard Chertcoff, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Helen R. Carloss, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

This is an appeal from the Board of Tax Appeals and involves the question whether the net estate of a deceased full-blood restricted Creek Indian, consisting of a restricted allotment and the proceeds of oil and gas produced therefrom, is subject to the estate tax imposed by Section 301(a) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 225, and the Revenue Act of 1932.

The question presents a contest between the Treasury Department, through the Commissioner of Internal Revenue, who seeks to impose the tax, and the Department of Interior, through the Superintendent of the Five Civilized Tribes, who seeks to avoid imposition and collection. The following facts are pertinent:

Jeanetta Burgess, née Tiger, a full-blood restricted Creek Indian, died on January 10, 1935. At her death she was seized of a restricted allotment, having an agreed value of $3,000, Liberty Bonds having an agreed value of $227,243.41, and cash with the Superintendent of the Five Civilized Tribes in the amount of $4,754.89. The Liberty Bonds represented the invested proceeds derived from the production of oil and gas from the allotment, all of which were restricted funds held by the Secretary of Interior under the direct supervision and control of the Superintendent of the Five Civilized Tribes.

During the decedent's lifetime, the Superintendent of the Five Civilized Tribes, amenable to the laws applicable to restricted Indians, collected all of the income of the decedent and deposited the same with other restricted funds with the United States Treasury, disbursing to the decedent and her family such sums as in the sole judgment of the Superintendent were necessary for their care and maintenance. Title to whatever articles were purchased for the benefit of the decedent was retained in the United States. The decedent had no control whatsoever over the restricted funds, except the rights to the exclusive benefit thereof, or so much as in the judgment of the Superintendent was required for the maintenance of herself and her family. From 1914 to the date of her death, the Superintendent disbursed to the decedent, for the exclusive care and maintenance of her family, the total sum of $444,811.90 out of the funds deposited with the Treasury to her credit.

█ She had the exclusive right to the possession of the allotment and retained the same as her residence. Upon the death of the decedent, the allotment and funds passed to her heirs, consisting of a husband, seven living children and three grandchildren, according to the laws of descent and distribution of Oklahoma. See Caesar v. Burgess, 10 Cir., 103 F.2d 503.

The heirs are likewise restricted Indians and the estate passed to the heirs by the simple expedient of transferring the account of the decedent with the United States Treasury to the restricted heirs according to their respective shares, which was effected by a bookkeeping transaction in the office of the Superintendent of the Five Civilized Tribes.

The estate tax (Revenue Act of 1926, as amended by the Revenue Act of 1928, and supplemented by the Revenue Act of 1932[1]) is imposed "* * * upon the

---

[1] c. 27, 44 Stat. 9

"TITLE III—ESTATE TAX

* * * * *

"Sec. 301. (a) In lieu of the tax imposed by Title III of the Revenue Act of 1924, a tax equal to the sum of the following percentages of the value of the net estate (determined as provided in section 303) is hereby imposed upon the transfer of the net estate of every decedent dying after the enactment of this

act, whether a resident or nonresident of the United States.

* * * * *

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

"(a) To the extent of the interest therein of the decedent at the time of his

transfer of the net estate of every decedent dying after the enactment of this act * * *".

The Superintendent contends: (1) That because of the absolute control of the Superintendent over the property of the decedent, and the absence of any control whatsoever over the affairs of the estate by the decedent, the "hollow interest in the estate" did not amount to an estate within the meaning and purposes of Section 301 of the Revenue Act of 1926, supra. The Superintendent also points to the manner in which the inheritance passed to the respective heirs by a simple bookkeeping transaction and contends that under these facts and circumstances, the estate is a government instrumentality and therefore nontaxable. (2) The Superintendent contends that by virtue of a series of treaties, agreements and acts of Congress,[2] culminating in the Act of April 26, 1906, 34 Stat. 137, 144, Sec. 19, the Indian allottee acquired a vested right to hold the said allotment free from all forms of taxation for a period of twenty-one years from the date of the patent, and that such right was within the guarantees of the Fifth Amendment to the Constitution.

By analogy, the Superintendent argues that since the restricted land is exempt from all forms of taxation, the restricted income therefrom is also exempt. The Board rejected the contentions of the Superintendent, holding the estate subject to the estate tax. 42 B.T.A. 958.

█ We can find nothing in the nature of the control exercised by the Superintendent as the guardian of the Indian ward which would justify the application of the instrumentality doctrine. The power and the control of the Superintendent over the estate of the Indian ward was no more than the mere exercise of a governmental function for the benefit of a private citizen. No public purpose or end is sought to be effected, except insofar as it becomes the duty of the government to fulfill its historical obligations to a class of its citizens, recognized as a dependent people. This is especially true when the so-called instrumentality doctrine is considered in the light of the recent decisions which bear upon this question. Choteau v. Burnet, 283 U.S. 691, 51 S.Ct. 598, 75 L.Ed. 1353; James v. Dravo Contracting Co., 302 U.S. 134, 150, 58 S.Ct. 208, 82 L.Ed. 155, 114 A.L.R. 318; Helvering v. Mountain Producers Corporation, 303 U.S. 376, 58 S.Ct. 623, 82 L.Ed. 907; Helvering v. Gerhardt, 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427; Graves v. People of State of New York ex rel. O'Keefe, 306 U.S. 466, 59 S.Ct. 495, 83 L.Ed. 927, 120 A.L.R. 1466; O'Malley v. Woodrough, 307 U.S. 277, 59 S.Ct. 838, 83 L.Ed. 1289, 122 A.L.R. 1379.

It is plain, therefore, that the dominion exercised over the estate of the decedent by the Superintendent was in the nature of a guardianship for the sole and exclusive benefit of the decedent and her family, and for her protection, and would not vest in the government a control exercised in furtherance of a public purpose now thought to be essential to exemption from taxes under the instrumentality doctrine.

█ It follows that by the terms of the act, the tax is laid upon the transfer of the estate of every decedent, and includes the estate of the decedent here, unless exemption from its imposition can be found in the agreements and acts of Congress relating to the affairs of the Creek Indians. Choteau v. Burnet, supra; Superintendent v. Commissioner, 295 U.S. 418, 55 S.Ct. 820, 79 L.Ed. 1517.

█ The agreement by which the lands allotted to the individual members of the Five Civilized Tribes, providing that such lands were to remain nontaxable for a period of twenty-one years or as long as the title remained in the allottee, has been held to vest in the Indian citizen a constitutional right to tax exemption and one which the United States, the state, or any political subdivision thereof, must respect and which the United States has the right and duty to enforce against all transgressions. Heckman v. United States, 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820; Mullen v. United States, 224 U.S. 448, 32 S. Ct. 494, 56 L.Ed. 834; Goat v. United States, 224 U.S. 458, 32 S.Ct. 544, 56 L.Ed.

---

death." 26 U.S.C.A. Int.Rev.Acts, pages 225, 227.

[2] Act of March 3, 1893, 27 Stat. 612, 645; Act of June 28, 1898, 30 Stat. 495,

497; Atoka Agreement March 1, 1901, 31 Stat. 861, as supplemented by the Act of June 30, 1902, 32 Stat. 500.

841; Choate v. Trapp, 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941; English v. Richardson, 224 U.S. 680, 32 S.Ct. 571, 56 L.Ed. 949; Bryan County, Okl. v. United States, 10 Cir., 123 F.2d 782. It was held in Carpenter v. Shaw, 280 U.S. 363, 50 S.Ct. 121, 122, 74 L.Ed. 478, that "While in general tax exemptions are not to be presumed and statutes conferring them are to be strictly construed, Heiner v. Colonial Trust Company, 275 U.S. 232, 48 S.Ct. 65, 72 L.Ed. 256, the contrary is the rule to be applied to tax exemptions secured to the Indians by agreement between them and the national government." Under this rule, the court denied the power of the state to tax the gross value of oil and gas produced from a tax-exempt allotment.

But in Shaw v. Gibson-Zahniser Oil Corporation, 276 U.S. 575, 48 S.Ct. 333, 72 L.Ed. 709, the court refused immunity from a tax sought to be imposed by the State of Oklahoma on restricted land purchased for a restricted Indian ward with restricted Indian trust funds. See, also, McCurdy v. United States, 246 U.S. 263, 38 S.Ct. 289, 62 L.Ed. 706; United States v. Ransom, 263 U.S. 691, 44 S.Ct. 230, 68 L.Ed. 508, affirming, 8 Cir., 284 F. 108.

Likewise in Choteau v. Burnet, supra, the court refused to extend immunity from a tax sought to be imposed by the national government upon income of a restricted Indian, although such income was derived from his share of a departmental oil and gas lease, the proceeds of which were held by the Superintendent as tribal trust funds until they were disbursed to the restricted Indian. The court held that after the funds were paid over to the unrestricted Indian, they no longer retained a restricted character and the recipient thereof was not entitled to tax immunity thereon.

In Superintendent v. Commissioner, supra, the court denied the claimed exemption from income tax (Revenue Act of 1928, Sec. 11 and 12, 26 U.S.C.A. Int.Rev. Acts, page 352) on income derived from the restricted allotment of a fullblood Creek Indian held by the United States in trust for him under the direction of the Superintendent. The court found nothing in the treaties, agreements, and acts of Congress, upon which the Superintendent now relies, which would justify exclusion from taxation the income derived from the restricted land, concluding that "the taxpayer here is a citizen of the United States, and wardship with limited power over his property does not, without more, render him immune from the common burden." [295 U.S. 418, 55 S.Ct. 822, 79 L. Ed. 1571.] The court made a clear distinction between a tax levied upon land as such, and the income derived therefrom.

■ The rationale of these cases indicates quite clearly that the vested right to exemption from taxation created by the agreement between the United States and the Indian, upon the issuance of a deed to the individual allottee, and vitalized by Choate v. Trapp, supra; Carpenter v. Shaw, supra; Board of Commissioners of Tulsa County v. United States, 10 Cir., 94 F.2d 450; Board of County Commissioners of Bryan County v. United States, supra, will not be extended to include taxes which do not fall directly upon the tax-exempt property.

■■ When considered in this light, it is plain that the exemption from taxation accorded the Creek Indians, such as the decedent, cannot be extended to the imposition of a tax on the "transfer of the net estate of every decedent dying after the enactment of this act." This is made more abundantly clear by the decisions which have defined the nature and character of the estate tax as an excise tax upon the shifting of the economic burdens and benefits, or on the privilege of transferring property of decedent at death. Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed 969; Chase National Bank v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388; Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397; People of State of New York ex rel. Cohn v. Graves, 300 U.S. 308, 57 S.Ct. 466, 81 L.Ed. 668, 108 A.L.R. 721; United States v. Jacobs, 306 U.S. 363, 367, 59 S. Ct. 551, 83 L.Ed. 763. "An estate tax is not levied upon the property of which an estate is composed." United States. Trust Co. Helvering, 307 U.S. 57, 59 S. Ct. 692, 693, 83 L.Ed. 1104.

There is nothing in the treaties or the acts of Congress, confirmatory thereof, which prohibits the imposition of a tax on the right to inherit or succeed to nontaxable property rights. Here the tax falls upon the transfer or shifting of the economic benefits and not upon the prop--

erty of which the estate is composed. It therefore is not within any constitutional immunity growing out of a contract or agreement between the United States and the Creek Indian, as characterized by the Act of April 26, 1906.

The decision of the Board of Tax Appeals is affirmed.