**HESTER v. DAVIS et al. (UNITED STATES, Intervenor).**

**No. 708.**

District Court, E. D. Oklahoma.

June 2, 1942.

502

Cook & Bingaman, of Purcell, Okl., for plaintiff.

E. Smith Hester, Co. Atty., of Purcell, Okl., for defendant.

Charles Champion, Asst. Dist. Atty., of Muskogee, Okl., for intervenor.

RICE, District Judge.

The lands involved in this action were a portion of the allotted lands of Lucinda Amos, full-blood Mississippi Choctaw Indian, Roll No. 1416. The allottee died on June 4, 1932. Prior to her death she had selected and designated one hundred sixty acres of her allotted lands, other than the land included herein, as exempt from taxation, under the provisions of the Act of Congress approved May 10, 1928, 45 Stat. 495 (hereinafter referred to as the Act). Under other provisions of the same Act of Congress the taxing authorities of Johnson County placed the lands involved herein upon the tax rolls of said County and thereafter sold said lands at a tax sale for taxes due for the year 1932 and subsequent years. Both at the original sale and a subsequent resale this property was bid in by the County and later sold by the County Commissioners to the plaintiff herein. All proceedings in connection with such tax sale and resale in regard to the time or place of sale, amount for which sold, notice and listing of such property, were in all things in conformity with the statutes of the State of Oklahoma.

This case presents for decision whether or not the State of Oklahoma may sell restricted Indian lands for taxes, which lands were subject to taxation under the provisions of Section 4 of the Act. It is typical of many such cases that have arisen or will arise in every County in this District, for since April 26, 1931, the lands which were made subject to the taxing laws of the State of Oklahoma by said Act have been placed upon the tax rolls by the taxing authorities of the various Counties of this District, and in due course many of the lands of the individual Indians have been sold pursuant to the laws of the State of Oklahoma for failure on the part of the Indian to pay the tax.

While the Government does not make any contention that the land is not subject to taxation by the State of Oklahoma, it makes the principal contention that the lands may not be sold to satisfy the tax lien by the State of Oklahoma, relying upon United States v. Alabama, 313 U.S. 274, 61

S.Ct. 1011, 85 L.Ed. 1327. The Government makes the additional contention that even if the land may be sold that it, the Government, is entitled to notice of the sale proceedings, relying upon State of Minnesota v. United States, 305 U.S. 382, 59 S. Ct. 292, 83 L.Ed. 235.

Section 1 of the Act provides "That the restrictions against the alienation, lease, mortgage, or other encumbrance of the lands allotted to members of the Five Civilized Tribes in Oklahoma, enrolled as of one-half or more Indian blood, be, and they are hereby, extended for an additional period of twenty-five years commencing on April 26, 1931 * * *." Section 3 of the Act provided minerals, including oil and gas, from restricted allotted lands of members of the Five Civilized Tribes of the State of Oklahoma "or from inherited restricted lands of full-blood Indian heirs or devisees of such lands, shall be subject to all State and Federal taxes of every kind and character the same as those produced from lands owned by other citizens of the State of Oklahoma * * *." Section 4 of the Act provides in part as follows: "That on and after April 26, 1931, the allotted, inherited, and devised restricted lands of each Indian of the Five Civilized Tribes in excess of one hundred and sixty acres shall be subject to taxation by the State of Oklahoma under and in accordance with the laws of that State, and in all respects as unrestricted and other lands."

It will thus be seen that by the Act the particular lands involved herein and many other lands of members of the Five Civilized Tribes were restricted and at the same time subjected to taxation by the laws of the State of Oklahoma. In order for the Indian owner to sell said lands at a voluntary sale, it was necessary that restrictions be removed, and the Secretary of the Interior was granted authority to remove such restrictions upon the application of the Indian owner. The sale involved herein was not a voluntary sale nor had the restrictions ever been removed by the Secretary of the Interior. The Act nowhere specifically mentions the sale of said land by the State of Oklahoma for the payment of delinquent taxes. The Government does not contest the right of the State of Oklahoma to subject the lands to taxes nor does it question the fact that the taxes constitute and are a valid lien upon the lands involved.

Does Section 4 of the Act authorize the sale of such lands by the State of Okla-

homa for the payment of delinquent taxes? The legislative history and background of this Act discloses that Congress was concerned at the time of its passage with the status of Indians of the Five Civilized Tribes and their lands situated in the State of Oklahoma after April 26, 1931, on which date without other legislation, most of the lands of members of the Five Civilized Tribes would not only be unrestricted but subject to taxation. As regards taxation it was provided by prior laws and treaties that all of the lands of the Choctaws and Chickasaws should be non-taxable while the title remained in the original allottees, but not to exceed 21 years from date of patent. As to the Seminoles it was provided that the forty-acre homestead of each allottee should be non-taxable as a homestead in perpetuity. As to the Creeks it was provided that the forty-acre homestead of each member of the Creek Nation should be non-taxable for 21 years. As to the Cherokees it was provided that the homestead allotment of each member of the Cherokee Tribe should be non-taxable while held by the allottee.

Prior to the passage of the Act restrictions upon the alienation of much of the lands of the Five Civilized Tribes had been removed by Congress, but there still remained a large number of full-blood Indians of the Five Civilized Tribes from whose lands restrictions had not been removed. There were approximately 12,-000 Indians whose lands were yet restricted in whole or in part, and the acreage involved was approximately 1,745,974, as disclosed by a letter that was directed to the Chairman of the Committee of Indian Affairs of the United States Senate, by the Hon. Hubert Work. After the lands of the Five Civilized Tribes had been allotted to the members in severalty by patents conveying a fee simple title, Oklahoma became a state. Rapid development took place, and in the various counties lands were acquired by citizens other than members of the Five Civilized Tribes. It will thus be seen that much land in the respective counties wherein lived members of the Five Civilized Tribes was subject to taxation and much was not subject to taxation. The people of the State of Oklahoma were vitally interested in the question of the taxation of said lands. This the Department of Interior recognized, as did Congress, as shown by the Committee Reports and the letter of the Secretary of In-

terior addressed to the Chairman of the Committee on Indian Affairs of the United States Senate. In his letter the Secretary of Interior stated, "While keeping in mind the interests of the restricted Indians of the Five Civilized Tribes, it is believed that if the period of restrictions on their lands be extended as contemplated in the proposed bill, they should not continue to be exempt from taxation, except as to a limited acreage of their land. It is further believed that the taxation provisions of Section 3 and 4 of the proposed bill are not only fair and just to the State of Oklahoma, but to the Indians as well."

The hearings before the Committee of Indian Affairs, House of Representatives, discloses that taxation, rather than extension of restrictions, was the question that provoked most discussion. The Hon. Edward B. Merritt, Commissioner of Indian Affairs appeared before the Committee and was questioned at length. On page 8 of the Report Mr. Merritt was asked this question, "If this goes on the tax rolls subjected to taxation other than homesteads of 160 acres, then it will be subject to sale for taxes, the same as any other land for failure to pay taxes?" To which question Mr. Merritt answered, "Yes; and the Indians will lose their lands unless this legislation is passed by Congress." To another question, "This legislation, then, protects them?" Mr. Merritt answered, "This legislation will protect them in their homesteads up to one hundred sixty acres of land." Another question, "How about the rest of the land?" Answer, "Well, we will endeavor to get the Indians to sell as much of their surplus lands between now and 1931 as possible so as to improve their homesteads, realizing that if we do not do that, the Indians will lose their surplus lands, and we prefer them to be sold under departmental jurisdiction so they can get the benefit of that protection."

■ At no place in the hearings before the Committee of Indian Affairs of the House of Representatives is there any statement made by anyone appearing before this Committee indicating that the lands which were to be subjected to taxation might not be sold by the State of Oklahoma for the payment of taxes. On the contrary all of the Committee Reports indicate that when Congress used the language contained in Section 4 that the particular lands "shall be subject to taxation by the State of Oklahoma *under and in accordance with the*

*laws of that State, and in all respects as unrestricted and other lands,"* (emphasis supplied) Congress intended that these lands should be subject to sale the same as the lands of any other citizen of the State of Oklahoma. Indeed any other conclusion would be absurd. The taxation of lands under the laws of Oklahoma includes more than merely assessing the lands and placing them upon the tax rolls. The State of Oklahoma has a complete system of taxation whereby the lands may be placed upon the tax rolls, levies may be made, liens created, lands sold and ultimately good title conveyed to purchasers at tax sales, and evidently Congress in subjecting these lands to taxation in accordance with the laws of the State of Oklahoma intended to subject the lands to all of the taxing laws of the State of Oklahoma. We, therefore, conclude that the Act in question permits the State of Oklahoma to sell this particular class of restricted lands for delinquent taxes the same as it may sell the lands of other citizens of the State of Oklahoma.

■ As to the other contentions made by the Government it would seem to follow that when Congress provided that the lands are subject to taxation "under and in accordance with the laws" of Oklahoma, compliance with the statutes of the State for the sale of said lands is all that is necessary. The law of Oklahoma requires no notice of the original sale other than that set forth in 68 O.S.A. § 382. This notice is by publication only and does not require the giving of the name of the owner or any person interested in the land. The notice for resale is provided in 68 O.S.A. § 432b. This notice likewise is by publication only and provides:

"Such notice shall contain a description of the real estate to be sold, the name of the owner of said real estate as shown by the last tax rolls in the office of the County Treasurer, the time and place of sale, a statement of the date on which said real estate was sold to the county for delinquent taxes, the year or years for which taxes have been assessed but remain unpaid, and that the same has not been redeemed for the period of two years from the date of sale, the total amount of all delinquent taxes, costs, penalties and interest accrued, due, and unpaid on the same, and that such real estate will be sold to the highest bidder for cash."

Compliance with this provision of the laws of Oklahoma was fully met. We do not believe that either the Minnesota case or the Alabama case relied upon by the Government is applicable to the situation presented herein.

In this particular case there is involved the interest of a minor. All parties concede that under the law of the State of Oklahoma the minor may, after reaching the age of twenty-one years redeem his interest by the payment of the taxes. The Government tenders on behalf of this minor his pro rata share of the delinquent taxes. The tax deed as to the minor's interest should be set aside and cancelled. As to the other interest, the plaintiff's title should be quieted against any claim of the adult Indians or the Government.

The attorney for the plaintiff should prepare proper form of judgment in conformity with the findings of fact and conclusions of law filed herein and in conformity with the views expressed in this memorandum, and submit for entry in Ardmore on the 2 day of June, 1942.