## UNITED STATES v. HESTER.
### No. 2669.

Circuit Court of Appeals, Tenth Circuit.
July 15, 1943.

Norman MacDonald, of Washington, D. C. (Norman M. Littell and Fred W. Smith, both of Washington, D. C., on the brief), for the appellant.

George Bingaman, of Purcell, Okl., for appellee.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The principal question presented by this appeal is whether certain restricted, but taxable, Indian lands in Oklahoma can be sold by the State for delinquent ad valorem taxes as other lands in that State. Section 4 of the Act of May 10, 1928, 45 Stat. 495, 496, provides in part: "That on and after April 26, 1931, the allotted, inherited, and devised restricted lands of each Indian of the Five Civilized Tribes in excess of one hundred and sixty acres shall be subject to taxation by the State of Oklahoma under and in accordance with the laws of that State, and in all respects as unrestricted and other lands * * *."[1]

On June 4, 1932, Lucinda Davis, a full-

[1] "Sec. 4. That on and after April 26, 1931, the allotted, inherited, and devised restricted lands of each Indian of the Five Civilized Tribes in excess of one hundred and sixty acres shall be subject to taxation by the State of Oklahoma under and in accordance with the laws of that State, and in all respects as unrestricted and other lands: Provided, That the Indian owner of restricted land, if an adult and not legally incompetent, shall select from his restricted land a tract or tracts, not exceeding in the aggregate one hundred and sixty acres, to remain exempt from taxation and shall file with the superintendent for the Five Civilized Tribes a certificate designating and describing the tract or tracts so selected: And provided further, That in cases where such Indian fails, within two years from date hereof, to file such certificate, and in cases where the Indian owner is a minor or otherwise legally incompetent, the selection shall be made and certificate prepared by the superintendent for the Five Civilized Tribes; * * *

blood Choctaw Indian, died seized of her duly allotted lands, which descended to her heirs at law, to wit, Alex Davis, husband, a full-blood Choctaw Indian, Lornnie Davis, a daughter, and Coley Davis, a minor son. During her life time, Lucinda Amos designated one hundred and sixty acres of her allotted lands as exempt from taxation pursuant to the provisions of Section 4 of the Act of May 10, 1928, supra, and the remainder of the land in excess of the designated one hundred and sixty acres, was placed on the tax rolls by McClain County, wherein the lands were situated, for the taxable year 1932. After the death of the allottee, these lands remained on the tax rolls and taxes were duly assessed and levied against the same for the taxable year 1932 and subsequent years. No taxes were paid thereon, and after sale and resale to the County, the appellee acquired title to the land from the County on April 9, 1941, all as provided and authorized by the applicable statutes governing the sale of real estate for delinquent ad valorem taxes in Oklahoma.[2] Thereafter and on September 10, 1941, the appellee instituted this action to quiet title to the lands as against the heirs, the County, and other parties claiming some interest therein. Notice of the pendency of the suit was duly served upon the Superintendent for the Five Civilized Tribes, and the case was removed to the Federal court in accordance with the provisions of Section 3 of the Act of April 12, 1926, 44 Stat. 239.

Thereafter, the United States in its own behalf, and on behalf of the heirs of Lucinda Amos, filed its complaint in intervention, in which it asserted that the lands involved here were at all times restricted and inalienable without the consent of the United States, and therefore the lands could not be alienated by involuntary sale for delinquent taxes without its consent. In the alternative, it is contended that if the lands in question could be alienated for delinquent ad valorem taxes, nevertheless the Government was an interested and indispensable party to the proceedings, which must have been prosecuted in the courts of the United States. In this connection, it is argued that the administrative proceedings conducted in accordance with the laws of the State, by virtue of which the lands were sold and title alienated, afforded no opportunity for the United States to have notice or to be heard in the interest of its Indian wards.

The trial court, after reviewing the legislative history of the Act of May 10, 1928, supra, held that "Congress, in subjecting these lands to taxation in accordance with the laws of the State of Oklahoma, intended to subject the lands to all of the taxing laws of the State of Oklahoma." It therefore concluded that the Act in question permitted the State of Oklahoma to sell this particular class of restricted lands for delinquent taxes as unrestricted lands of other citizens of the State of Oklahoma.[3] The court further held that since the Act in question permitted the full sweep of the applicable State laws, compliance with the State law relating to notice of the sale of real estate for delinquent ad valorem taxes (68 O.S.A. §§ 382 and 432b), was sufficient. Hester v. Davis, D.C. 45 F.Supp. 501.

We agree with the trial court, and can add but little to the fullness of the

---

and, when approved by the Secretary of the Interior, shall be recorded in the office of the superintendent for the Five Civilized Tribes and in the county records of the county in which the land is situated; and said lands, designated and described in the approved certificates so recorded, shall remain exempt from taxation while the title remains in the Indian designated in such approved and recorded certificate, or in any full-blood Indian heir of devisee of the land: Provided, That the tax exemption shall not extend beyond the period of restrictions provided for in this Act: And provided further, That the tax-exempt land of any such Indian allottee, heir, or devisee shall not at any time exceed one hundred and sixty acres.

"Sec. 5. That this Act shall not be construed to reimpose restrictions heretofore or hereafter removed by the Secretary of the Interior or by operation of law, nor to exempt from taxation any lands which are subject to taxation under existing law."

[2] It is stipulated that all the proceedings pursuant to which the appellee acquired title from McClain County were in conformity with the statutes of the State of Oklahoma relating to the sale and resale of real estate for delinquent ad valorem taxes, and in conformity with the sale of property acquired at resale by the County. See 68 O.S.A. §§ 381 to 432j.

[3] Since the son, Coley Davis, was a minor, he was entitled, under the laws of Oklahoma, to redeem his undivided one-third interest in the lands. The trial court so held, and his right to redeem is not in issue.

logic which supports its conclusions. It is pertinent to remember that the sovereign State of Oklahoma has plenary power to tax all property within its domain, unless specifically restrained by force of Federal law. Indians residing in Oklahoma are citizens of that State, and they are amenable to its civil and criminal laws. Their property, unless exempt, is subject to taxation in the same manner as property belonging to other citizens of that State. Matter of Heff, 197 U.S. 488, 25 S.Ct. 506, 49 L.Ed. 848; Goudy v. Meath, 203 U.S. 146, 27 S.Ct. 48, 51 L.Ed. 130.

After the effective date of the Act of May 10, 1928, the allottee, Lucinda Amos, designated one hundred and sixty acres of her allotment as tax exempt, in pursuance of Section 4 of the Act, and the remainder of the land, which is involved here, became subject to taxation by the State of Oklahoma after April 26, 1931, and was accordingly placed upon the tax rolls of McClain County prior to her death on June 4, 1932. In other words, the lands involved here had attained a taxable status at the time of her death in virtue of the 1928 Act, and the lands therefore descended to her heirs subject to taxation by the State of Oklahoma, under and in accordance with the laws of that State. There is no contractual right to tax immunity—no treaty obligation, or Federal law to respect. Cf. Worchester v. Georgia, 6 Pet. 515, 8 L.Ed. 483; Kansas Indians, 5 Wall. 737, 18 L.Ed. 667; New York Indians, 5 Wall. 761, 18 L.Ed. 708; Choate v. Trapp, 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941; Bryan County v. United States, 10 Cir., 123 F.2d 782.

The power of the State of Oklahoma to subject these lands to taxation is conceded, only the power to enforce the tax under and in accordance with its laws is challenged here. There is nothing in the text or in the legislative history of the Act to indicate that Congress intended to retain any measure of control over the power of the State to tax the lands, or to qualify or limit its power to enforce the collection of the tax in accordance with its uniform laws. Indeed, it would be difficult to find words more expressive of a Congressional will to permit the full sweep of the State taxing laws over the property in question, and the legislative history amply supports this textual construction.[4]

True the property involved here is restricted against alienation by force of the same Act which subjects it to taxation by the State of Oklahoma (§§ 1 & 4, Act of May 10, 1928), but restrictions against alienation and non-taxability are separate and distinct subjects. Choate v. Trapp, supra; Superintendent v. Commissioner, 295 U.S. 418, 55 S.Ct. 820, 79 L.Ed. 1517; Oklahoma Tax Commission v. United States, 63 S.Ct. 1284, 87 L.Ed. ——. Restrictions against alienation, without more, do not render the restricted lands immune from the operation of the taxing laws of the State of Oklahoma. Landman v. Commissioner, 10 Cir., 123 F.2d 787; Superintendent v. Commissioner, supra, page 123 F.2d at 421; McCurdy v. United States, 246 U.S. 263, 38 S.Ct. 289, 62 L.Ed. 706; Board of County Commissioners v. Seber, 10 Cir., 130 F.2d 663, affirmed 63 S.Ct. 920, 87 L.Ed. ——; Shaw v. Gibson-Zahniser Oil Corp., 276 U.S. 575, 48 S.Ct. 333, 72 L.Ed. 709; Oklahoma Tax Commission v. United States, supra.

Doubtless, Congress could have provided the means and method by which the taxes authorized to be assessed against the property would be collected in the event of non-payment. It could have, in the exercise of its paramount power over Indian affairs, qualified or limited the power of the State to collect the tax which it had authorized, but it neither expressly, nor impliedly did so. Congress was concerned rather with a policy in respect to Indian affairs as they related to State and Federal sovereignty. On one hand, it was interested in the protection of its Indian wards whose lands were about to become both alienable and taxable. (See Note 4). On the other hand, it was necessarily concerned with the impending power of the State of Oklahoma to impose uniform taxes upon all lands within its domain for the support of the common government, the benefits of which inured to the Indian owner as well as other citizens. Out of this conflict, the Act of May 10, 1928, became law, one of the manifest purposes of which was to affirmatively consent to the operation of the taxing laws of the State of Oklahoma over lands within this particular class. Thus, the taxing power of Oklahoma became operative without let or hindrance.

A necessary incident of the power to tax property is the power to uniformly

---

[4] See Hearings before the Committee on Indian Affairs, House of Representatives, 70th Congress, 1st Session, House Bill 12,000, March 22, 24 and 29, 1928.

enforce the collection of the tax by any constitutional means deemed appropriate to that end. It is therefore plain that the lands in question are subject to all the laws which relate to the taxing scheme of the State of Oklahoma, and this necessarily includes the power to sell the lands, as other lands, for delinquent ad valorem taxes legally assessed thereon. State of Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235, and United States v. Alabama, 313 U. S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327, are not contrary to the conclusions herein reached.

The judgment is affirmed.