### UNITED STATES v. BOARD OF COUNTY COMMISSIONERS OF McINTOSH COUNTY, OKL., et al.

No. 3243.

Circuit Court of Appeals, Tenth Circuit.

March 21, 1946.

Fred W. Smith, Atty., Department of Justice, of Washington, D. C. (J. Edward Williams, Acting Head, Lands Division, Department of Justice, of Washington, D. C., Cleon A. Summers, U. S. Atty., of Muskogee, Okl., and Roger P. Marquis, Atty., Department of Justice, of Washington, D. C., on the brief), for appellant.

James H. Harkin, Asst. Atty. Gen. (Randell S. Cobb, Atty. Gen., and Hazen Green, Co. Atty., of Eufaula, Okl., on the brief), for appellees.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

The question for determination is whether certain land containing 120 acres in McIntosh County, Oklahoma, was subject to tax pursuant to state law.

Section 19 of the Act of April 26, 1906, 34 Stat. 137, 144, provides that no full-blood Indian of the Choctaw, Chickasaw, Cherokee, Creek, or Seminole Tribes shall have power to alienate, sell, dispose of, or encumber any of the lands allotted to him for a period of twenty-five years from and after passage and approval of the Act, unless such restrictions shall prior to the expiration of that period be removed by Act of Congress; and further, that all lands upon which restrictions are removed shall be subject to taxation, and the other lands shall be exempt from taxation as long as the title remains in the original allottee. The pertinent part of section 1 of the Act of May 27, 1908, 35 Stat. 312, provides that "all allotted lands of enrolled full-bloods, and enrolled mixed-bloods of three-quarters or more Indian blood, including minors of such degrees of blood (Five Civilized Tribes), shall not be subject to alienation * * * prior to April twenty-sixth, nineteen hundred and thirty-one, except that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe." Section 4 provides that all land from which restrictions have been or shall be removed shall be subject to taxation. Section 9 provides that the death of any allottee shall operate to remove all restrictions upon alienation of the allottee's land, "Provided, That no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee * * *." And it contains a second proviso which does not have material bearing here. This section was amended by the Act of April 12, 1926, 44 Stat. 239, but the presently material part remained unchanged in substance. Section 1 of the Act of May 10,

602

1928, 45 Stat. 495, provides in effect that restrictions against alienation of lands allotted to members of the Five Civilized Tribes in Oklahoma, enrolled as of one-half or more Indian blood, are extended to April 26, 1956. Section 2 extends in like manner the provisions of section 9 of such Act of May 27, 1908, as amended, except the second proviso thereof. Section 4 provides that on and after April 26, 1931, the allotted, inherited, and devised restricted lands of each Indian of such Tribes in excess of 160 acres shall be subject to taxation by the state, in all respects as unrestricted and other lands. It further provides that if the Indian owner is an adult and not legally incompetent, he shall select from his restricted land a tract or tracts, not exceeding in the aggregate 160 acres, to remain exempt from taxation, and shall file with the Superintendent of the Five Civilized Tribes a certificate designating the tract or tracts selected. It further provides that in cases where the Indian fails within two years from the date of the Act to file the certificate, and in cases where the Indian is a minor or otherwise legally incompetent, the selection shall be made and the certificate prepared by the Superintendent. It further provides that the certificate, whether prepared by the Indian or the Superintendent, shall be subject to approval by the Secretary, shall be recorded in the office of the Superintendent, and shall be recorded in the county records. And it further provides that the land designated and described in the certificate. so recorded shall remain exempt from taxation while the title remains in the Indian, or in any full-blood Indian heir or devisee of the land, but not beyond the period of restrictions provided for in the Act. Section 5 provides that the Act shall not be construed to reimpose restrictions theretofore or thereafter removed by the Secretary or by operation of law, nor to exempt from taxation any lands which are subject to taxation under existing law. Section 2 of the Act of June 20, 1936, 49 Stat. 1542, provides that all lands, the title to which is held by an Indian subject to restrictions against alienation or encumbrance except with the consent of the Secretary, heretofore purchased out of trust or restricted funds of such Indian, are declared to be instrumentalities of the Federal Government and shall be nontaxable until otherwise directed by Congress. That section

was amended by the Act of May 19, 1937, 50 Stat. 188, 25 U.S.C.A. § 412a, to provide that all homesteads, theretofore or thereafter purchased out of trust or restricted funds of individual Indians, are declared to be instrumentalities of the Federal Government and shall be nontaxable until directed by Congress, provided the title to such homesteads are held subject to restrictions against alienation except with the approval of the Secretary. And it further provides that the Indian owner or owners shall select, with the approval of the Secretary, either agricultural or grazing lands, not exceeding in the aggregate 160 acres, or village, town, or city property, not exceeding in cost $5000, to be designated as a homestead.

Part of the land in suit was allotted to Lewis Harjo, a full-blood enrolled Creek Indian; part was allotted to Lena Hall, likewise a full-blood enrolled Creek Indian; and patents were issued to the respective allottees. The land was restricted against alienation while title remained in the allottees unless the restrictions be removed by the Secretary of the Interior, as provided by law. Sulloly Jones, an enrolled Creek Indian of the full-blood, received an allotment of land similarly restricted against alienation, from which income was derived through the sale of oil and gas. The funds representing the income were paid to the Secretary of the Interior in trust for the use and benefit of Jones and were subject to disbursement under rules and regulations promulgated by the Secretary. In 1914, Jones desired to acquire by purchase the land allotted to Harjo and Hall, and he applied to the Secretary for consent to use for that purpose the requisite amount of his restricted funds. The application was approved, and in order to consummate the transaction the Secretary removed the restrictions upon the land allotted to Harjo and Hall upon the condition that the conveyances to Jones contain a provision in the habendum clause restricting alienation by Jones during his lifetime or at any time prior to April 26, 1931, unless with the consent of the Secretary, and upon the further condition that the consideration paid Harjo and Hall be from the restricted funds of Jones. The deeds, each containing the provision restricting alienation, were delivered and the consideration was paid with restricted funds. Jones died in 1925, and the land

passed by descent and distribution to his widow and children, one-third undivided interest to the widow and two-fifteenths undivided interest to each of the children, all of whom were full-blood Creek Indians. The land was occupied by Jones as a homestead until his death, and thereafter the heirs continued to occupy it as their homestead. But no certificate was ever executed by the heirs or on their behalf designating any part of the land as tax exempt.

The land was assessed for taxes levied pursuant to state law for the years 1915 to 1943, inclusive. The taxes for some of the years were paid for and on behalf of Jones, those for other years were paid for and·on behalf of the heirs of Jones, and those for still other years became delinquent. The land was sold to the county for the delinquent taxes and was later resold to J. R. Watson, and a tax deed was issued to him. Watson brought an action in the state court in which it was sought to establish the validity of the tax deed. The Board of County Commissioners was a party, and the United States intervened. Judgment was entered cancelling the tax deed, directing payment to Watson of a specified amount then in the hands of a receiver, and dismissing the action without prejudice to the right of the United States or the heirs of Jones to recover for any taxes which might have been illegally collected.

The United States, in its own behalf and on behalf of the restricted heirs of Jones, brought this action against the Board of County Commissioners, the Assessor, and the Treasurer of the county seeking judgment determining and adjudicating that the land was not subject to assessment; that the several annual assessments were null and void; that they be cancelled and set aside; that the taxing officials be enjoined from placing the land upon the tax rolls so long as it should remain exempt; and that recovery be had for the amounts which had been paid for taxes, together with interest. The defendants answered admitting most of the allegations contained in the complaint but denying that the land was exempt from tax. The court entered judgment for the defendants, and the United States appealed.

■ Lands in Oklahoma owned by Indians are subject to assessment for ad valorem taxes under the laws of the state, unless exempted by effective treaty provi-sion or Act of Congress. Goudy v. Meath, 203 U.S. 146, 27 S.Ct. 48, 51 L.Ed. 130; Board of Commissioners v. Seber, 318 U. S. 705, 63 S.Ct. 920, 87 L.Ed. 1094; United States v. Hester, 10 Cir., 137 F.2d 145. And the general principle that tax exemptions are not granted by mere implication has application in respect to lands owned by Indians. Oklahoma Tax Commission v. United States, 319 U.S. 598, 63 S.Ct. 1284, 87 L.Ed. 1612. But the general rule of strict construction of exemption from taxation does not apply in its full rigidity to laws granting exemptions to Indians. On the contrary, statutory provisions of that kind are to be construed liberally. Choate v. Trapp, 244 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941; Carpenter v. Shaw, 280 U.S. 363, 50 S.Ct. 121, 74 L.Ed. 478; Landman v. Commissioner of Internal Revenue, 10 Cir., 123 F.2d 787, certiorari denied 315 U. S. 810, 62 S.Ct. 799, 86 L.Ed. 1209; Board of Commissioners of Marshall County v. United States, 10 Cir., 152 F.2d 540.

■ It is well settled that restrictions against alienation and exemption from taxation of lands owned by Indians are separate and distinct subjects, not dependent upon each other. Choate v. Trapp, supra; Superintendent of Five Civilized Tribes v. Commissioner, 295 U.S. 418, 55 S.Ct. 820, 79 L.Ed. 1517; Oklahoma Tax Commission v. United States, supra; United States v. Hester, supra. The provision contained in the respective deeds conveying the land to Jones was an effective restriction against alienation of the land during the lifetime of Jones or until April 26, 1931. Sunderland v. United States, 266 U.S. 226, 45 S.Ct. 64, 69 L.Ed. 259. But a mere interdiction against alienation, whether imposed by Act of Congress or a provision of that kind in a deed of conveyance, alone and without more, does not immunize the land from taxation under state law. McCurdy v. United States, 246 U.S. 263, 38 S.Ct. 289, 62 L.Ed. 706; United States v. Ransom, 263 U.S. 691, 44 S.Ct. 230, 68 L.Ed. 508, affirming 8 Cir., 284 F. 108; Shaw v. Gibson-Zahniser Oil Corp., 276 U.S. 575, 48 S.Ct. 333, 72 L.Ed. 709; Board of Commissioners of Creek County v. Seber, 10 Cir., 130 F.2d 663, affirmed 318 U.S. 705, 63 S.Ct. 920, 87 L.Ed. 1094.

■ The Secretary removed the restrictions created by the Act of 1908, supra, against alienation of the land by the

allottees. But the removal was not carte blanche. It was conditioned upon the land being conveyed to Jones with an effective restriction in the deeds of conveyance against alienation by him. The several steps were parts of an integrated transaction, designed in part to vest title in Jones with restriction against alienation by him. It was never intended that the allottees should be free to alienate the land to any other person of their own choice. Neither was it intended that Jones should upon acquiring the land be free to alienate it at will. Section 4 of the Act of 1908, supra, does consent in general language to the taxation under state law of land from which restrictions have been or shall be removed. But when the section is fitted into the well recognized pattern of legislation relating to Indians, it seems plain that the intent and purpose of Congress in fashioning the statute was to lift the forbidding bar against taxation under state law only in respect to lands which no longer were subject to restrictions against alienation. Congress doubtless spoke in the considered belief that when restrictions against alienation were effectively removed and the Indian owner was free to encumber, sell, or otherwise use his land as do other owners, he should pay taxes upon his land as other owners pay taxes upon their lands. But the proscription upon an Indian owner of restricted land is no different in scope and effect, whether the restriction is created by Act of Congress or by a provision in the deed of conveyance to him. His limitation is identical, whether the restriction finds its source in an Act of Congress or in the deed by which he acquired the land. It is difficult to perceive any reasonable basis on which to rest the conclusion that Congress intended by section 4 to protect from taxation land which is restricted by statute against alienation, but to subject to taxation land restricted by effective provision in a deed of conveyance against alienation. No suggestion has been made and none occurs to us why Congress should desire to draw any such distinction in respect to taxation under state law between lands restricted against alienation by the respective methods. Viewed in the light of the background against which the statute was enacted, and taking into consideration the end sought to be attained, we think Congress intended in the enactment of section 4 to deal exclusively with land which was no longer restricted against alienation, and that it did not purpose to consent that land restricted against alienation by provision in a deed of conveyance should be subject to taxation under state law. This land was not subject to tax while title remained in the allottees. Jones acquired it from them. It was never on the tax rolls prior to the time he acquired it. It never occupied the status contemplated by section 4, that is to say, land from which restrictions had been removed and the owner was free to alienate it at will, without the approval of the Secretary. And that status was an essential prerequisite to the exertion of the power of the state to subject the land to taxation. Under the provisions of the Act of 1908, as amended, the land was exempt from taxation pursuant to the law of the state at any time prior to April 26, 1931.

 The status of the land in respect of taxation after April 26, 1931, depends upon the Act of May 10, 1928, supra. It is to be remembered that section 1 of that Act continues to April 26, 1956, restrictions against alienation of land allotted to members of the Five Civilized Tribes, enrolled as of one-half or more Indian blood; and that section 2 extends in like manner the provisions of section 9 of such Act of 1908, as amended, except the second proviso thereof. It is also to be borne in mind that section 4 grants consent to the taxation after April 26, 1931, of the allotted, inherited, and devised restricted lands of each Indian of such Tribes in excess of 160 acres; and provides for the selection of the tract or tracts to remain free from taxation, and for the making and filing within a specified time of a certificate of selection. The land involved here constituted allotted land, within the meaning of the Act; it descended to the full-blood heirs of Jones, subject to restrictions against alienation; and the restrictions were extended to April 26, 1956. Ward v. United States, 10 Cir., 139 F.2d 79; United States v. Williams, 10 Cir., 139 F.2d 83, certiorari denied 322 U. S. 727, 64 S.Ct. 943, 88 L.Ed. 1563. The requirement that the selection be made and the certificate of designation be executed and filed within the time prescribed by the statute is a procedural command for the convenience of the state. It is not a condition precedent to the right of tax-

exemption, and a certificate executed and filed after that time is effective and relates back to April 26, 1931. Muskogee County v. United States, 10 Cir., 133 F.2d 61; Board of Commissioners of Marshall County v. United States, supra. Since the widow of Jones exhausted her right under the Act by designating as tax exempt other land aggregating 160 acres, her undivided interest in this land could not be selected for that purpose and therefore it became subject to taxation after April 26, 1931. But since none of the other heirs of Jones owned tax-exempt land in excess of 160 acres, including his or her undivided interest in this land, the undivided interests of such heirs in this land were exempt from taxation, even though no selection was made and no certificate of designation was executed and filed.

The effect of the Act of June 20, 1936, supra, was to exempt from taxation all lands the title to which was held by an Indian subject to restrictions against alienation except with the consent of the Secretary, provided the lands were purchased with trust funds of such Indian. The amendment of May 19, 1937, supra, narrowed the exemption to homesteads consisting of not more than 160 acres of agricultural or grazing lands, or village, town, or city property not exceeding in cost $5000, to be designated as a homestead. But it provides that homesteads purchased with trust funds of individual Indians shall be exempt if the title is held subject to restrictions against alienation except with consent of the Secretary. This land meets these requirements for exemption. It was not purchased with trust funds of the heirs of Jones. But it was purchased with trust funds of Jones. The conveyances to him each contained a restriction against alienation except with the consent of the Secretary. The land descended to his heirs subject to the restriction against alienation. It consists of less than 160 acres of agricultural or grazing land, and since the death of Jones it has been occupied by the heirs as a homestead. It follows that the land was exempt from taxation under the Act of 1936, in its original form and as amended. Cf. Board of Commissioners v. Seber, 10 Cir., 130 F.2d 663.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views expressed in this opinion.