UNITED STATES of America, Plaintiff,

v.

WEWOKA CREEK WATER AND SOIL CONSERVANCY DISTRICT NO. 2 OF the STATE OF OKLAHOMA, Earl Moore, County Treasurer of Hughes County, Oklahoma, Harold Morgan, County Treasurer of Seminole County, Oklahoma, Defendants.

Civ. No. 5213.

United States District Court
E. D. Oklahoma.

Sept. 27, 1963.

Edwin Langley, U. S. Atty., Muskogee, Okl., E. C. Nelson, Asst. U. S. Atty., for plaintiff.

Allen G. Nichols, Wewoka, Okl., George S. Turner, Holdenville, Okl., Bill Biggers, Wewoka, Okl., for defendants.

DAUGHERTY, District Judge.

The above matter came on for hearing on June 19, 1963, all parties being present by counsel, evidence was introduced and the matter submitted to the Court on the evidence introduced, the stipulation of facts entered into by the parties and filed with the approval of the Court, and with the understanding that supplemental briefs were to be filed by the parties if they so desired.

The plaintiff accordingly filed a supplemental brief herein. The defendants did not file reply briefs. The defendant Earl Moore, County Treasurer of Hughes County, Oklahoma, filed his initial and only brief on March 7, 1963. The defendant Wewoka Creek Water and Soil Conservancy District No. 2 specifically adopts the brief of Moore, and, it is assumed by the Court, that the defendant, Harold Morgan, County Treasurer of Seminole County, likewise adopts the brief of defendant Moore and his position as set out therein.

This is an action brought by the United States of America for itself and on behalf of its Indian wards, whose names are set out in Exhibit "A" attached to plaintiff's complaint, alleging that certain taxes assessed by the Wewoka

Creek Water and Soil Conservancy District No. 2, State of Oklahoma, in September of 1959, are illegal and void by reason of the fact that the tracts against which such assessments of taxes were made are tax exempt by reason of their status as restricted Indian lands, and thereby specifically exempt from taxation under an Act of Congress. The tracts specifically involved herein are set out in Exhibit "A" to plaintiff's Complaint. Plaintiff asserts that the said tax assessments and any purported tax sales held pursuant thereto constitute a cloud on the title of each of the respective owners of the tracts set out in the Complaint, and will thereby cause said property owners irreparable injury unless the same are cancelled and set aside by this Court. Plaintiff prays that any and all assessments made against the property described in Exhibit "A" by the Conservancy District be declared illegal and void; further that all assessments, penalties and costs against the real property described in Exhibit "A" as a result of the assessments be cancelled; that any and all tax certificates or deeds covering the property described in Exhibit "A" granted by the County Treasurer of Hughes County and the County Treasurer of Seminole County, Oklahoma, be set aside and held for naught; that the said County Treasurer of Hughes County and the County Treasurer of Seminole County, Oklahoma, and their successors in title, and the Wewoka Creek Water and Soil Conservancy District No. 2 be permanently enjoined from claiming any right, title or interest in and to the real property involved herein by reason of the said illegal assessments; and further that said defendants and their successors and each of them be permanently enjoined from assessing and collecting any taxes or special assessments covering the real property which is described in Exhibit "A" herein so long as said real property remains in the status of restricted Indian land.

The defendants Moore and the Conservancy District admit the assessments as alleged by the plaintiff and the non-payment of the taxes and the tax sale pursuant thereto, but generally deny the tax exempt status of this land. The defendant Morgan alleges that the tracts located in Seminole County, Oklahoma, were advertised but no certificates of tax sales were issued. Further, that no taxes were collected on the tracts in question herein except one voluntary payment as to tract No. 31. Defendant Morgan also generally denies the tax exempt status of the tracts in question.

The controversy between the parties herein stems from their respective interpretations of Section 6(b) of the Act of August 4, 1947. (61 Stat. 731). Public Law, 336. Section 6 provides, in part, as follows:

"(a) Except as hereinafter provided, the tax-exempt lands of any Indian of the Five Civilized Tribes in Oklahoma shall not exceed one hundred and sixty acres, whether the said lands be acquired by allotment, descent, devise, gift, exchange, partition, or by purchase with restricted funds.

"(b) All tax-exempt lands owned by an Indian of the Five Civilized Tribes on the date of this Act shall continue to be tax-exempt in the hands of such Indian during the restricted period: Provided, That any right to tax exemption which accrued prior to the date of this Act under the provisions of the Acts of May 10, 1928 (45 Stat. 495), and January 27, 1933 (47 Stat. 777), shall terminate unless a certificate of tax exemption has been filed of record in the county where the land is located within two years from the date of this Act."

It is the position of the plaintiff herein that the tax exemptions acquired pursuant to the Acts of May 10, 1928, and January 27, 1933, are presently evidenced by certificates of tax exemptions filed in the appropriate counties wherein the lands in question herein are situated, and that Section 6(b) of the Act of August 4, 1947, does not require a filing of a

new certificate of tax exemption in order to claim such exemptions on the properties. The proviso in Section 6(b) is deemed by the Government to set merely a termination or cut-off date of August 4, 1949, by which any tax exemption rights acquired under previous Acts of Congress may be claimed by the filing of the appropriate certificate.

The defendants, on the other hand, view Section 6(b) as reiterating the fact that the tax exempt status of lands acquired under previous Acts of Congress shall continue in such status, but interprets the proviso as requiring a new or additional filing of a certificate claiming such exemption within two years of the date of the Act of August 4, 1947. That is to say, that the defendants consider the proviso as requiring a renewed filing of a certificate of tax exemption on any restricted lands held by Indians of the Five Civilized Tribes and to which were granted such tax exemption by previous Acts of Congress.

Thus, the question presented for determination by the Court is the intent and meaning of Section 6(b) of the Act of August 4, 1947. (61 Stat. 731), Public Law 336. All parties indicate that their research of this matter fails to reveal any decided case dealing specifically with this question and the Court's own research is to the same effect.

The plaintiff offered the testimony of two witnesses at the hearing held on June 19, 1963. The defendants offered no evidence other than the stipulation entered into and referred to heretofore. The plaintiff offered the testimony of Mr. W. F. Semple whose qualification as an attorney, author and authority on Indian land law was admitted by the defendants herein. The expert opinion of Mr. Semple was in complete conformity with the plaintiff's position in this case. Further, plaintiff offered the testimony of Mr. Ira Linder, an employee of the Realty Branch of the Five Civilized Tribes, Bureau of Indian Affairs, Muskogee, Oklahoma. Mr. Linder testified he was employed in such position in 1947 and 1949 and further testified as to the

official position taken by the Bureau of Indian Affairs in Muskogee relative to the filing of tax exemption certificates under the 1947 Act and his actions taken thereunder.

It was stipulated by the parties in this case that all the tracts of land described in Exhibit "A" attached to the plaintiff's Complaint were at all times material to the bringing of the plaintiff's action in a status of restricted Indian land. Further, that the Conservancy District caused an assessment of taxes to be made against each of these tracts of land and that said taxes assessed on said tracts were not paid on November 1, 1959, and on November 7, 1960, and pursuant thereto the County Treasurers of Hughes and Seminole Counties, as a result of the nonpayment of said taxes, assessed and advertised said lands described in Exhibit "A" for sale. Further, that there was a certificate of tax exemption filed in the office of the respective County Clerks of Hughes County and Seminole County, Oklahoma, covering all the tracts described in Exhibit "A" under the Act of Congress of May 10, 1928; except as to tracts 19, 22, 25, 27, 32, 35 and 36 in Exhibit "A", which tracts were not covered by the 1947 Act nor affected thereby, and are tracts admittedly exempt as related to this purported assessment.

It was further stipulated by the parties that the records of the County Treasurers of Hughes County and Seminole County, Oklahoma, do not indicate that notice of tax sales of the lands set out in Exhibit "A" herein was given to the Area Director, Bureau of Indian Affairs, the legal successor to the Superintendent of the Five Civilized Tribes, by registered mail for the 90 days prior to the tax sale of said lands, all as set out and required by Section 6(b) of the Act of Congress of August 4, 1947. In this regard it should be noted that plaintiff asserts as an additional ground for the illegality of the assessment and tax sales pursuant thereto that no notice was given to the Area Director as required by the aforementioned statute. The

Court does not deem it necessary to reach this question, as will be evident by its further opinion herein.

■ It was further agreed and stipulated by the parties at the time of the hearing on this matter that the photocopy of a letter from H. M. Critchfield, Acting Assistant Commissioner, Bureau of Indian Affairs, Department of the Interior, to Mr. W. O. Roberts, Superintendent, Five Tribes Agency, Muskogee, Oklahoma, dated April 6, 1949, may be introduced into evidence in lieu of the original, and that such letter would be competent for the purpose of setting out the policy of the Department of the Interior, Bureau of Indian Affairs, relative to the filing of tax exemption certificates under Section 6(b) of the Act of August 4, 1947. The interpretation of Section 6(b) of the 1947 Act made by the Bureau of Indian Affairs is in accord with the position taken by the plaintiff herein. Such construction placed upon the Act by the Bureau is entitled to weight in construing this statute, though not controlling upon this Court. United States v. Copper Corporation, 312 U.S. 600, 61 S.Ct. 742, 85 L.Ed. 1071; Mid-Continent Petroleum Corp. v. N. L. R. B., 6 Cir., 204 F.2d 613, certiorari denied 346 U.S. 856, 74 S.Ct. 71, 98 L.Ed. 369.

The position taken by the Bureau of Indian Affairs as evidenced by its policy statement dated April 6, 1949, and followed and implemented by the Realty Branch of the Five Tribes, Bureau of Indian Affairs, Muskogee, Oklahoma, was that it was not necessary to file tax exemption certificates pursuant to the Act of 1947 for Indians falling in the following categories:

"Any Indian who filed a tax exemption certificate under the Act of May 10, 1928, and who is still living."

"Any full-blood heir or devisee of an Indian who had filed a tax exemption certificate under the Act of May 10, 1928, and who died prior to January 27, 1933."

Further, that Section 6(b) of the 1947 Act required that any right to a tax exemption which accrued prior to the date of that Act under the provisions of the Acts of May 10, 1928, and January 27, 1933, be evidenced by a tax exemption certificate filed of record in the appropriate County where the land is located within two years of the date of the 1947 Act. The failure to place such tax exemption certificate of record would result in the loss of the tax exemption. The Indians affected by this provision fall within the following categories:

"Any Indian to whom a right of tax exemption accrued under the Act of May 10, 1928, and for whom no tax exemption certificate has been filed.

"All restricted Indians, regardless of the degree of Indian blood, who acquired by inheritance, devise, gift, or purchase with restricted funds, after January 27, 1933, and prior to August 4, 1947, the entire interest in a tract of tax exempt land."

■ Upon a careful examination of the statutes in question here the Court deems the above interpretation to be correct. The Court finds that it was not necessary in order to preserve the previously granted tax exempt status of these restricted Indian lands that a new or duplicate certificate of tax exemption be filed in the County wherein the land was located. That is to say, the tax exemption certificates filed pursuant to the Acts of May 10, 1928, and January 27, 1933, were appropriate and effective for the purpose of preserving the tax exempt status of the land, and the proviso in Section 6(b) of the Act of August 4, 1947, merely set a termination or cut-off date by which such previously acquired rights of tax exemption must have been claimed or else lost.

■■ All the tracts in question herein derived their tax exempt status pursuant to Section 4 of the Act of May 10, 1928. (45 Stat. 495). In a well reasoned opinion construing Section 4 of this Act Judge Eugene Rice, sitting in

the Eastern District of Oklahoma, held that by Section 4 the Congress evidenced its intent to consent that certain lands in excess of 160 acres held by restricted Indians might be taxed by the State of Oklahoma, and their subdivisions thereto, and that the provisos contained in Section 4 were not conditions precedent to exemption from taxation but rather positive enactments providing the procedure to be followed by the Indian, or upon his failure to act, by the Superintendent of the Five Civilized Tribes, for designating the 160 acres to remain exempt from taxation. It was reasoned that the purpose of the Act was to guarantee to each Indian owner of restricted lands 160 acres which should remain tax exempt, at the same time providing a method whereby the tax officials of Oklahoma might know what lands were and what were not taxable. In holding that the filing of a tax exemption certificate was a procedural command for the convenience of the State and not a condition precedent to an Indian's right of tax exemption, it was reasoned that the word "provided" was not used in its usual and general way of usage in the clauses introduced by such word. It is generally stated that the purpose of a proviso engrafted upon a preceding enactment is to restrict or modify the enacting clause or exempt something from its operation, but such is not always the purpose. The cardinal rule in construing a statute is that the Court must ascertain and give effect to the legislative intent, and this rule applies equally well to the construction of provisos. The enacting clause and the provisos should be construed together with a view to giving effect to each in carrying out the intention of the legislature as manifested in the entire Act. Zweigel v. Webster, D.C., 32 F. Supp. 1015.

 The manifest intent of Congress by portions of the Act of May 10, 1928, and January 27, 1933, was to preserve to the Indian ward of the United States certain acreages in a tax exempt status. The Act of August 4, 1947, is to be construed in the light of the legislative history behind the related acts of Congress dealing with the tax exempt status of restricted Indian lands. The general rule of the strict interpretation of exemption from taxation does not apply in its full rigidity to laws granting exemptions to Indians. On the contrary, statutory provisions of that kind are to be liberally construed. United States v. Board of County Commissioners of McIntosh County, Oklahoma, 10 Cir., 154 F.2d 600; Choate v. Trapp, 244 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941; Carpenter v. Shaw, 280 U.S. 363, 50 S.Ct. 121, 74 L.Ed. 478; Landman v. Commissioner of Internal Revenue, 10 Cir., 123 F.2d 787, certiorari denied 315 U.S. 810, 62 S.Ct. 799, 86 L.Ed. 1209; Board of County Commissioners of Marshall County, Okl. v. United States, 10 Cir., 152 F.2d 540. Under the Zweigel case, supra, either the Government or the affected Indian could sue to set aside the tax deed and recover the land involved even though no certificate of tax exemption was filed pursuant to the Act of 1928. The Indian was permitted for the first time in such a suit to assert the tax exempt status of the land. Subsequently, and after the passing of the Act of 1947, in Bridges v. Stick, D.C., 106 F.Supp. 506, it was held that the purpose of Section 6(b) of the Act of 1947 was to effect a change in the law as had been previously construed and announced by the Court. In Section 6 a specific provision is inserted that the right to tax exemption shall terminate unless a tax exemption certificate is filed within two years from the effective date of the Act. In the Bridges case no such tax certificate was filed, and the judgment thus was that upon the failure to file a certificate claiming an exemption the land ceased to be tax exempt and the right of the Indian to claim that it was tax exempt terminated. The Bridges opinion indicated that to hold otherwise would fail to stabilize those titles that had been sold during the time intervening between the 1928 Act and the 1947 Act, and this Court agrees fully with this analysis of the application of the Act of 1947. Such

interpretation of Section 6(b) applies with equal force to this case.

The language of the Act of 1947 when read in the light of the legislative history and with a view to carrying out the congressional intent of preserving certain tax exemptions for restricted Indian lands seems susceptible of only one interpretation, that interpretation being the one placed upon it by the plaintiff herein and by the Bureau of Indian Affairs in implementing the provisions of the Act. A study of House Report No. 740, 80th Congress, First Session, from the Committee on Public Lands, does not indicate that the purpose of the Act was to require a renewed filing or a duplicate filing of previously granted tax exemption rights; but on the contrary, all the existing rights of the Indian as to tax exempt property were specifically preserved subject only to the procedural command (now placed in the law to stabilizing the titles in this area and in effect to legislate around the opinion in the Zweigel case) to file certificates of tax exemption in the appropriate county prior to August 4, 1949, if such previously acquired tax exemption on which no certificate had been filed was to be claimed by the affected Indian after such date.

It is, therefore, the opinion of the Court that the tracts involved herein, being restricted Indian lands and a tax exemption certificate being on file in the appropriate county pursuant to the provisions of the Act of May 10, 1928, retain their tax exempt status pursuant to said certificates and that a renewed filing of tax exemption certificates was not called for nor necessary under the provisions of Section 6(b) of the Act of August 4, 1947. This being the case, the assessments of taxes and the sales pursuant thereto were illegal and void, and plaintiff is entitled to the relief prayed for. Counsel for plaintiff will prepare an appropriate judgment pursuant to Rule 58, Federal Rules of Civil Practice, in conformity with this opinion and submit it to the Court for signing and filing within 10 days of the date of this opinion.