ZWEIGEL v. WEBSTER et al. (UNITED STATES, Intervener).

No. 4802.

District Court, E. D. Oklahoma. April 27, 1940.

1016

I. O. Correll and John Allen Phillips, both of Atoka, Okl., for plaintiff.

Cleon A. Summers, U. S. Atty., and Charles N. Champion, Asst. U. S. Atty., both of Muskogee, Okl., for defendants. and the United States.

RICE, District Judge.

The plaintiff instituted this suit to quiet his title to "the Northeast Quarter (NE¼) of the Northwest Quarter (NW¼), Section One (1), Township Three (3) South, Range Ten (10) East, containing forty (40) acres, located in Atoka County, State of Oklahoma," claiming title by virtue of a resale tax deed from the State of Oklahoma, said lands having been sold for taxes for the years 1932, 1933, 1934, and 1935. By appropriate procedure the United States government was made a party and the cause removed from the State court, in which it was filed, to this court. By its petition in intervention filed herein in its own behalf and on behalf of the heirs at law of Summie Webster, deceased, a full-blood Choctaw Indian, the government seeks to cancel said resale tax deed and further seeks an order of this court that said lands are exempt from taxation. In its brief filed herein the government contends that only an undivided two-thirds interest in said lands is exempt from taxa--

tion, and seeks a cancellation of the resale tax deed in so far as a two-thirds interest is concerned.

The facts herein were stipulated and disclose that the lands in question were a portion of the homestead allotment of Summie Webster, a full-blood member of the Choctaw Tribe of Indians; that Summie Webster died on July 8, 1929, leaving as his heirs a wife, Agnes Webster, also a full-blood Choctaw Indian, and two children born since March 4, 1906, unenrolled, and who received no allotments of land. On January 2, 1929, Summie Webster selected one hundred acres of his allotted lands, situated in Stephens County Oklahoma, as tax exempt under the provisions of the Act of Congress approved May 10, 1928, 45 Statutes at Large, page 495. This selection was approved by the Secretary of the Interior. On June 6, 1936, the Assistant Superintendent of the Five Civilized Tribes selected sixty acres of lands out of the allotted lands of Summie Webster, situated in Atoka County, as tax exempt. This sixty acres did not include the forty acres involved herein. The selection by the Assistant Superintendent of the Five Civilized Tribes was approved by the Secretary of the Interior on July 2, 1936. The selection and approval was made and done on behalf of Summie Webster, the officials not knowing that Summie was dead. The stipulations further disclose that Agnes Webster, the surviving wife of Summie, selected one hundred sixty acres of her own allotment as tax exempt. The date of the resale tax deed is April 29, 1936. The validity of the resale tax deed is not questioned on any ground other than that the lands in question were not subject to taxation.

No selection from their inherited and restricted lands of one hundred sixty acres to remain exempt from taxation was ever made by either of the unenrolled heirs of Summie Webster, nor has the Superintendent of the Five Civilized Tribes ever made the selection for them. How does this affect the status of the lands as regards taxation by the State of Oklahoma?

The applicable Act of Congress was approved May 10, 1928, 45 Statutes 495. By Sections 1 and 2 of the above Act, Congress extended existing restrictions on the allotted and inherited lands of Indian members of the Five Civilized Tribes for twenty-five years from April 26, 1931. Section 3 of said Act provided for taxation of all minerals, including oil and gas produced from such restricted lands of said Indians, by both federal and state authorities. Section 4 of said Act relates to taxation of the lands of such Indians within the State of Oklahoma and is as follows: "Sec. 4. That on and after April 26, 1931, the allotted, inherited, and devised restricted lands of each Indian of the Five Civilized Tribes in excess of one hundred and sixty acres shall be subject to taxation by the State of Oklahoma under and in accordance with the laws of that State, and in all respects as unrestricted and other lands: *Provided,* That the Indian owner of restricted land, if an adult and not legally incompetent, shall select from his restricted land a tract or tracts, not exceeding in the aggregate one hundred and sixty acres, to remain exempt from taxation and shall file with the superintendent for the Five Civilized Tribes a certificate designating and describing the tract or tracts so selected: *And provided further,* That in cases where such Indian fails, within two years from date hereof, to file such certificate, and in cases where the Indian owner is a minor or otherwise legally incompetent, the selection shall be made and certificate prepared by the superintendent for the Five Civilized Tribes; and such certificate, whether by the Indian or by the superintendent for the Five Civilized Tribes, shall be subject to approval by the Secretary of the Interior and, when approved by the Secretary of the Interior, shall be recorded in the office of the superintendent for the Five Civilized Tribes and in the county records of the county in which the land is situated; and said lands, designated and described in the approved certificates so recorded, shall remain exempt from taxation while the title remains in the Indian designated in such approved and recorded certificate, or in any full-blood Indian heir of devisee of the land: *Provided,* That the tax exemption shall not extend beyond the period of restrictions provided for in this Act: *And provided further,* That the tax-exempt land of any such Indian allottee, heir, or devisee shall not at any time exceed one hundred and sixty acres".

Had Congress not included Section 4 in the above Act, none of the restricted lands of the Indians within the State of Oklahoma would have been subject to taxation, for the power to tax by the State of Oklahoma would have been inconsistent with restrictions upon alienation by Con-

gress. See United States v. Rickert, 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532; United States v. Shock, C.C., 187 F. 870, Eastern District of Oklahoma; Marcy v. Board of Commissioners of Seminole County et al., 45 Okl. 1, 144 P. 611. Without Section 4 in the Act, the situation, as regards the lands involved herein, would have been that in the hands of these heirs all of the lands would have been restricted and therefore tax exempt until April 21, 1956.

The legislative history of the Act of Congress shows that the Act, as drawn, was a compromise. From the view of the Department of the Interior, it was desirable that the period of restrictions be extended, but the question of taxation was vital to Oklahoma. The primary purpose of the Act was to extend the period of restrictions, but, in order to secure this part of the legislation, it was necessary to make some provision for taxation of the lands by the State of Oklahoma. Approximately 1,750,000 acres of land was affected. Under the existing law, on April 26, 1931, all restrictions against alienation would expire and all but a limited acreage in the hands of some of the allottees would have become taxable. Mr. Merritt, Assistant Commissioner of Indian Affairs, testified before the committee of Congress (hearings before the Committee on Indian Affairs, House of Representatives, page 74) as follows: "The bill now before Congress (H.R. 12000) has been under consideration for many months and has been given the most careful thought. It is a compromise measure drafted and redrafted after many conferences with official representatives of the Five Civilized Tribes. H. R. 12000 is a generous bill for the State of Oklahoma. Under Section 3 of the bill, Oklahoma will recover in taxes from oil and other minerals approximately one million dollars annually, and, under the terms of the bill, Oklahoma will also be permitted to tax approximately seven hundred fifty thousand acres of land not now taxed."

A casual reading of Section 4 of the Act in question might tend to give the impression that Congress was providing tax exemption for restricted Indian lands, with two provisos that the Indian do certain things in order to be assured of the tax exemption. In fact, the Act is sometimes referred to as the tax exemption statute. But a careful reading, in view of the law as it then existed and the legislative history, convinces that Congress in the enacting clause of Section 4 was giving its consent that certain lands (all in excess of one hundred sixty acres of any one Indian affected) might be taxed by the State of Oklahoma, and that the provisos following are not conditions precedent to exemption from taxation, but are rather positive enactments providing the procedure to be followed by the Indian, or, upon his failure to act, by the Superintendent of the Five Civilized Tribes, for designating the one hundred sixty acres to *remain exempt from taxation*. It seems clear that the purpose of the Act was to guarantee to each Indian owner of restricted lands one hundred sixty acres which should *remain tax exempt,* and at the same time provide a method whereby the taxing officials of Oklahoma might know what lands were and what were not taxable. Nowhere in the Act do we find language indicating an intent that the Indian would subject all his lands to taxation by failure to designate the particular one hundred sixty acres he wished to remain non-taxable.

In thus construing the clauses introduced by the word "provided," the usual and general construction of a proviso is not given. It is the general purpose of a proviso engrafted upon a preceding enactment to restrict or modify the enacting clause or except something from its operation, but such is not always the purpose. The enacting clause being one providing for the taxation of certain lands, the clauses introduced by the word "provided" are in no sense an exception thereto nor restriction thereon. Another cardinal rule in construing statutes is that the court must ascertain and give effect to the legislative intent, and this rule applies to the construction of provisos. The two should be construed together, with a view of giving effect to each and the carrying out of the intention of the legislature, as manifested in the entire Act. 59 Corpus Juris 1089. And where it is apparent that the legislature intended such, a proviso must be construed to enlarge the scope of the Act or to assume the function of an independent enactment. 59 Corpus Juris 1091; United States v. Morrow, 266 U.S. 531, 45 S.Ct. 173, 69 L.Ed. 425; United States v. Mullendore et al., 10 Cir., 35 F.2d 78.

If the intent of Congress was to provide for each restricted Indian one hundred sixty acres of tax-exempt lands for an additional period of twenty-five

years after April 21, 1931, then, in so far as these unenrolled heirs of Summie Webster are concerned, that purpose can be. effected only by sustaining the contention of the government herein. When Summie Webster died the two-thirds interest in his allotted lands inherited by these unenrolled heirs was not only restricted, but it was tax exempt. Prior to the date on which restrictions against alienation would have expired, Congress passed this Act by which restrictions were extended for twenty-five years. On July 8, 1929, these two unenrolled heirs each had, by virtue of the Act of 1928, the right to select one hundred sixty acres of their inherited lands as tax exempt. This they failed to do. Having failed for two years to make their own selection, it became the duty of the Superintendent of the Five Civilized Tribes to make the selection for them, subject to the approval of the Secretary of the Interior. Had the Superintendent of the Five Civilized Tribes made the selection and had it been approved by the Secretary of the Interior, the lands in question would not have been placed upon the tax rolls by the county authorities. By the terms of the Act, we think the lands were not taxable. Consequently, the county authorities had no right, as a matter of law, to place the same upon the tax rolls. The court is confronted with a problem in administration of the law. The county authorities probably were justified in placing these lands upon the tax rolls, there being no certificate of exemption on file. But the question is, should the Indian ward of the government be deprived of his property by his own failure to act and by the failure of the properly constituted authorities to act for and in his behalf. We think there is but one answer to that question. The Act places no limitation of time upon the Superintendent of the Five Civilized Tribes in making the selection. Although Congress probably assumed that the selections would be made promptly, yet the fact that no time limit was fixed, indicates a recognition by Congress of the fact that in administering the law some errors and some failures to act would occur. Although these errors and failures to act may be inconvenient to the taxing authorities of Oklahoma, nevertheless the rights of the Indians affected must prevail, for there is nothing in the Act of Congress which makes the lands taxable in the event of a failure to act. Any doubt as to an interpretation of the Act should be resolved in favor of the Indian. Red

Bird et al. v. United States, 203 U.S. 76, 27 S.Ct. 29, 51 L.Ed. 96; Choate v. Trapp, 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941; Alaska Pacific Fisheries v. United States, 248 U.S. 78, 39 S.Ct. 40, 63 L.Ed. 138. Attorneys for the intervener will prepare judgment accordingly and present to counsel of record and thereafter to the court for entry at Muskogee the 6th day of May, 1940.