## BOARD OF COUNTY COM'RS OF MARSHALL COUNTY, Okl., et al. v. UNITED STATES.

### No. 3199.

Circuit Court of Appeals, Tenth Circuit.

Dec. 20, 1945.

---

Reuel W. Little, of Madill, Okl. (O. C. Barnes, Co. Atty., Marshall County, Oklahoma, and Jack H. Smith, both of Madill, Okl., on the brief), for appellants.

John C. Harrington, Atty., Dept. of Justice, of Washington, D. C. (J. Edward Williams, Acting Head, Lands Division, Dept. of Justice, of Washington, D. C., Cleon A. Summers, U. S. Atty., and J. W. Crawford, Asst. U. S. Atty., both of Muskogee, Okl., and Roger P. Marquis, Atty., Dept. of Justice, of Washington, D. C., on the brief), for the United States.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

Houston Ward, a full-blood Chickasaw Indian, Roll No. 2922, received an allotment of 224.25 acres of land in Marshall County, Oklahoma. Of this, 94.25 acres constituted his homestead allotment and 130 acres his surplus allotment. Prior to 1928, he had sold 120 acres of the surplus with the approval of the Secretary of the Interior. Thus, when the Act of May 10, 1928, 45 Stat. 495, became effective, Ward held title to 94.25 acres, his homestead allotment, and to ten acres of his surplus allotment.

Section 4 of the Act of May 10, 1928, provided that on and after April 26, 1931, the allotted, inherited, and devised restricted lands of each Indian of the Five Civilized Tribes in excess of 160 acres should be subject to taxation by the State of Oklahoma; that the Indian owner of restricted land, if an adult and not legally incompetent, should select from his restricted land a tract or tracts, not exceeding 160 acres, "to remain exempt from taxation" and should file with the Superintendent of the Five Civilized Tribes a certificate designating and describing the tract or tracts so selected; that where the Indian should fail, within two years from the date of the Act, to file such certificate, and in cases where the Indian owner is a minor or otherwise legally incompetent, the selection should be made and the certificate prepared by the Superintendent; that such certificate should be subject to approval by the Secretary of the Interior and, when approved, should be recorded in the office of the Superintendent and in the county records of the county in which the land is situated; and that such "lands, designated and described in the approved certificates so recorded," should "remain exempt from taxation while the title" remained "in the Indian designated in such approved and recorded certificate, or in any full-blood Indian heir of devisee of the land," but that the tax exemption should not extend beyond the period of restrictions provided for in the Act.

In 1929, Ward executed a certificate designating his homestead allotment of 94.25 acres as tax exempt and the certificate was recorded in accordance with the provisions of the Act of May 10, 1928. In 1941, Ward sold his entire homestead allotment after restrictions thereon had been removed. Thereafter, on February 26, 1943, the Superintendent executed a certificate designating the remaining ten acres of the surplus allotment as tax exempt, which certificate was duly approved and recorded. Meanwhile, the ten acres of the surplus allotment had been placed upon the tax rolls of Marshall County for the years 1935 to 1940, inclusive, and were sold to

the county in 1942 for nonpayment of taxes. On July 21, 1942, the county conveyed the tract to Jack H. Smith by regular resale tax deed.

The United States, in its own behalf and on behalf of Ward, instituted this action against the county officials and Smith to cancel the tax assessments and the resale tax deed, to restrain future assessments, and to quiet the title to the ten acres in Ward.

This is an appeal from a judgment, as prayed for, in favor of the United States.

■ Under the Act of May 27, 1908, 35 Stat. 312, the land in question was restricted against alienation until April 26, 1931. By the Act of May 10, 1928, the restrictions were extended for an additional period of 25 years from April 26, 1931. By the Act of June 28, 1898, 30 Stat. 495, 507, as modified by the Act of July 1, 1902, 32 Stat. 641, the land in question was nontaxable for a period of 21 years from the date of the patent. The tax exemption vested a right in the Indian which could not be taken away by Congress.[1]

■ But for the provisions in the Act of May 10, 1928, subjecting land in excess of 160 acres to taxation by the state, the land would have remained exempt from taxation until April 26, 1956, or until restrictions were removed therefrom, because the power to tax would have been inconsistent with the restrictions against alienation imposed by Congress.[2]

■ The doctrine of strict construction of exemption from taxation does not apply to laws granting tax exemptions to Indians. On the contrary, they are to be given a liberal construction.[3]

■ Congress gave its consent to the state to tax restricted lands of Indians of the Five Civilized Tribes in excess of 160 acres. Where such an Indian owned only 160 acres or less of restricted land, Congress did not consent to the taxation of any part thereof. Hence, we conclude that Congress clearly intended the restricted lands of such an Indian up to 160 acres should remain free from taxation; that such was the paramount purpose of § 4 of the Act of May 10, 1928; and that it should be liberally construed to carry out that purpose.

The provisions with respect to designations were for the benefit and convenience of the state to enable it to determine the excess acreage that, under the consent given by Congress, would become subject to taxation on April 26, 1931. We think a requirement that a designation be filed and approved was not imposed as a condition to the right of exemption. Rather, it was a procedural requirement for the convenience of the state. We think it is fair to conclude that Congress assumed such designations would be made, either by the Indians or the Superintendent, prior to April 26, 1931, but we do not think Congress intended that where the Indian failed to file a designation within two years from May 10, 1928, and the Superintendent failed to file seasonably a designation for such Indian, consent should be regarded as given by Congress to tax restricted lands not in excess of 160 acres or that the Indian should lose his exemption.

■■ It is true that until a designation has been filed, where the Indian owns restricted land in excess of 160 acres, the state taxing officials cannot place the excess lands on the tax rolls, but where designations were not seasonably made, the state taxing officials could have called the matter to the Superintendent's attention and there can be no doubt the Superintendent would have then acted promptly. Even had the Superintendent failed to make such a designation on request of such taxing officials, they could have proceeded by mandamus to compel the Superintendent to perform his official duty. He had discretion in the selection of the land to be designated, but his legal duty to file a designation was plain and not subject to discretion. Although the exercise of discretion will not be controlled by mandamus, yet the writ will lie to compel the person in whom the discretion is lodged to proceed with its exercise.[4]

---

[1] Choate v. Trapp, 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941.

[2] United States v. Rickert, 188 U.S. 432, 438, 23 S.Ct. 478, 47 L.Ed. 532; Zweigel v. Webster, D.C., E.D.Okl., 32 F.Supp. 1015. Cf. United States v. Shock, C.C., E.D.Okl., 187 F. 870; Marcy v. Board of Commissioners of Seminole County, 45 Okl. 1, 144 P. 611.

[3] Choate v. Trapp, 224 U.S. 665, 675, 32 S.Ct. 565, 56 L.Ed. 941.

[4] Connett v. City of Jerseyville, 7 Cir., 125 F.2d 121, 125; Hudson v. Parker, 156 U.S. 277, 288, 15 S.Ct. 450, 39 L. Ed. 424.

Two designations of tax-exempt land were made, one by Ward and one by the Superintendent, but there is nothing in the Act to indicate that separate designations could not be made. Indeed, the last sentence of § 4 of the Act indicates the contrary. It reads: "That the tax-exempt land of any such Indian allottee, heir, or devisee shall not at any time exceed one hundred and sixty acres."

In the instant case, the equities are in favor of Ward. He never, at any time, owned as much as 160 acres after the Act of May 10, 1928, became effective. Smith is not injured. He may recover the original purchase money under § 390, Tit. 68, O.S.1941.

We conclude that the designation made by the Superintendent was valid, that it related back to April 26, 1931,[5] and that the judgment should be affirmed.

---

[5] Cf. Muskogee County, Okl. v. United States, 10 Cir., 133 F.2d 61, 64.