**BRIDGES v. STICK et al.**

Civ. 3073.

United States District Court
E. D. Oklahoma.

May 9, 1952.

Busby, Harrell & Trice, Ada, Okl., for plaintiff.

Edwin Langley, U. S. Atty., Muskogee, Okl., for defendants and intervener, U. S. A.

RICE, Chief Judge.

1. This cause came on for hearing on the 5th day of December, 1951; plaintiff appeared by his attorney, Orel Busby, and the intervener, United States of America, for itself and its restricted wards appeared by Cleon A. Summers, United States Attorney, and Francis Stewart, Assistant United States Attorney. The facts as hereinafter found are not in dispute. The matter was taken under advisement to afford the attorneys an opportunity to submit written briefs on the legal questions involved.

2. This action was begun in the District Court of Atoka County, Oklahoma, to quiet title to the land hereinafter described, and other land. Notice was served upon the Area Director, successor to the Superintendent for the Five Civilized Tribes, in accordance with the provisions of the Act of April 12, 1926, 44 Stat. 239, and amendments thereto, and after recommendation for removal said cause was removed to this Court by the United States Attorney within the time granted by the state court. Upon application this cause, except as to the land hereinafter described, was remanded to the state court. The land hereinafter described is restricted Indian land in which restricted Indians claim interests. The Court retained jurisdiction over and now has jurisdiction to determine the issues involving the land hereinafter described.

3. Nellie Stick was duly enrolled as a full-blood Chickasaw Indian opposite Roll No. 873 and there was duly allotted to her the following described land located in what is now Atoka County, Oklahoma, to-wit:

The South Half of the Northeast Quarter of the Northwest Quarter (S2 NE4 NW4) of Section 32, Township 1 North, Range 14 East.

Deed therefor was duly executed, delivered and recorded and she became seized and possessed of the fee simple title to said land, subject to the restrictions provided by Congress. Those restrictions were never removed.

4. Nellie Stick died intestate January 10, 1908, leaving as her heirs the following named persons who admittedly inherited the portions of said real estate set out opposite their respective names:

Billie Stick, husband, full-blood Chickasaw No. 872, ..................... ⅓

Katie Stick Scribner, full-blood Chickasaw, No. 874, ..................... ²⁄₁₅

Mattie Stick, full-blood Chickasaw, No. 875, ............................. ²⁄₁₅

Eddie Stick, full-blood Chickasaw, No. 877, ............................. ²⁄₁₅

Josephine Kuctchubby, full-blood Chickasaw, No. 878, ..................... ²⁄₁₅

Emily Stick Gill, full-blood Chickasaw, No. 879, ......................... ²⁄₁₅

5. Mattie Stick died intestate on or about January 25, 1908, without having disposed of her interest, leaving no husband or issue surviving, but leaving her father, Billie Stick, who admittedly inherited her entire interest in said land.

6. That said Billie Stick died intestate in or about February 1918, without having remarried, leaving surviving only his three children, Eddie Stick, Emily Stick and Katie Stick Scribner, who admittedly inherited an undivided one-third interest each in his estate, or an undivided ⁷⁄₄₅ interest each in the land above-described, so that each of them then owned an undivided ¹³⁄₄₅ interest in said land.

7. The said Josephine Kuctchubby died testate on or about October 21, 1923, and her interest was distributed equally under

the terms of her will to her three children, Johnson Perry, full-blood Chickasaw, No. NB–407, Clarence Perry, unenrolled full-blood Chickasaw, and Nellie Perry, unenrolled full-blood Chickasaw, each of whom thereby became seized and possessed of an undivided $\frac{2}{45}$ interest in said land.

8. The said Katie Stick Scribner died intestate on or about November 6, 1936, leaving no husband, but leaving as her only heirs her three ½ blood children, Theo Scribner, Alma Scribner Henry, and Lois Scribner Maxwell, each of whom inherited an undivided $\frac{1}{3}$ interest in her estate, or an undivided $\frac{13}{135}$ interest each in the land above described.

9. On January 1, 1932, the land herein involved admittedly was owned by the following named heirs in the proportions set out opposite their respective names:

Eddie Stick ........................ $\frac{39}{135}$
Emily Stick ........................ $\frac{39}{135}$
Katie Stick Scribner............... $\frac{39}{135}$
Johnson Perry ...................... $\frac{6}{135}$
Clarence Perry ..................... $\frac{6}{135}$
Nellie Perry now Grimes ........... $\frac{6}{135}$

None of said heirs disposed of their interests and restrictions were not removed.

10. None of the land above described was certified as tax-exempt. For Emily Stick and Johnson Perry there was certified for each 160 acres of other lands as tax-exempt. An undivided ¼ interest each in 213.45 acres of land allotted to Josephine Kuctchubby was certified for Clarence Perry and Nellie Perry, and an undivided ⅕ interest each in 175.82 acres of land allotted to Jeff Perry was certified as tax-exempt for them. No lands were certified as tax-exempt for Katie Stick Scribner or Eddie Stick.

11. Ad valorem tax assessments were made against the land here involved for the year 1932 and subsequent years, the assessments being against the land as a unit. When the tax records showed the taxes to be delinquent a sale was had at the November sale following the taxable year, and the land was struck off by the county. Upon failure to redeem a resale was had at the time provided by the Oklahoma Statutes, and plaintiff became the purchaser thereat.

No question is raised as to the regularity of the forms of procedure, notice or deed. A resale deed in regular form was executed and delivered to plaintiff on May 29, 1940, and was duly recorded in the office of the County Clerk of Atoka County, Oklahoma, on November 7, 1940. Plaintiff went immediately into possession of said land and has been in the adverse possession of the same since the execution of said deed, and has thereafter paid the annual taxes assessed against said lands by Atoka County, Oklahoma.

12. The reasonable rental value of said land for each of the years plaintiff has been in possession is $5.

### Conclusions of Law

■ 1. This cause was properly removed from the State Court, pursuant to the Act of Congress of April 12, 1926, Section 2, 44 Stat. 240, as amended, and this Court has jurisdiction.

■ 2. The tax deed involved herein was valid on its face and it was incumbent on the defendant to offer proof showing its invalidity. Todd v. Hargrove, 198 Okl. 140, 176 P.2d 805.

■ 3. A portion of the land covered by the tax deed in question was at the time of the assessment of the taxes and at the time of the sale tax-exempt, under the law as announced by this Court in Zweigel v. Webster, D.C., 32 F.Supp. 1015, and under the law of Oklahoma the tax sale was invalid and void. Citing Squires v. Swanson, 169 Okl. 390, 37 P.2d 276.

4. Plaintiff now contends that he should prevail by reason of the statutes of limitations of the State of Oklahoma, and also by reason of the Act of Congress of August 4, 1947, 61 Stat. 731, 25 U.S.C.A. § 355 note, generally referred to as the "Stigler Bill." Prior to the enactment of the Stigler Bill the law was clearly against the plaintiff, and prior to the amendment by the Oklahoma Legislature to the statute of limitations, 12 O.S.A. § 93, intervener and the restricted Indians would not have been barred by the Oklahoma statutes of limitation.

5. Prior to 1949 the Oklahoma Supreme Court had consistently held that Section

(3), 12 O.S.A. § 93 did not apply to a void, as distinguished from a voidable, tax sale. Kirsch v. Tracy, 174 Okl. 489, 55 P.2d 428. The Supreme Court of Oklahoma had, however, just as consistently held that the period of limitation provided in Sections 1 and 2 of said Act were applicable to judicial sales, even though they were void sales.

■ 6. In 1949, 12 O.S.A. § 93 was amended by adding paragraph 6 which provides as follows:

"(6) Numbered paragraphs 1, 2, and 3 shall be fully operative regardless of whether the deed or judgment or the precedent action or proceeding upon which such deed or judgment is based is void or voidable in whole or in part, for any reason, jurisdictional or otherwise; provided that this paragraph shall not be applied so as to bar causes of action which have heretofore accrued, until the expiration of one (1) year from and after its effective date."

The effective date of the amendment was April 18, 1949.

7. Under the amended statute of limitation of the State of Oklahoma the limitation is specifically applied to a void tax sale. Under the stipulated facts herein the statute of limitations of Oklahoma ran on April 18, 1950, and thereafter intervener and defendant are barred from asserting the defenses interposed. Wolfe v. Phillips, 10 Cir., 172 F.2d 481.

■ 8. The Court is further of the opinion that intervener and the restricted Indians are precluded from asserting any claim to the lands involved by reason of the Act of Congress of August 4, 1947, supra. One of the purposes of said Act as set forth in the official House Report was as follows:

"Section 6 of the proposed bill is designed to adjust the existing complex situation involving the taxability of restricted lands belonging to Indians of the Five Civilized Tribes. Under this section all existing rights to tax-exemption would be preserved, subject to the limitation that any right to tax exemption arising under the acts of May 10, 1928 (45 Stat. 495), and January 27,

1933 (47 Stat. 777), would have to be evidenced by a certificate of tax exemption filed in the county records within 2 years of the date of the enactment of this bill."

As a result, Section 6(b) was included in the Act in question and reads as follows:

"(b) All tax-exempt lands owned by an Indian of the Five Civilized Tribes on the date of this Act shall continue to be tax-exempt in the hands of such Indian during the restricted period: Provided, That any right to tax exemption which accrued prior to the date of this Act under the provisions of the Acts of May 10, 1928 (45 Stat. 495), and January 27, 1933 (47 Stat. 777), shall terminate unless a certificate of tax exemption has been filed of record in the county where the land is located within two years from the date of this Act."

9. Zweigel v. Webster, supra, was not appealed but subsequently numerous decisions of the Tenth Circuit Court of Appeals announced the same principle of law as set forth therein. See U.S. v. Board of County Commissioners of McIntosh County, Okl., 154 F.2d 600; Board of County Commissioners of Marshall County, Oklahoma, v. U. S., 152 F.2d 540, and Muskogee County, Oklahoma, v. U. S., 133 F.2d 61. The effect of the decisions was that the requirement in the Act of May 1928 for the filing of a tax exemption certificate was a procedural command for the convenience of the State and not a condition precedent to an Indian's right of tax exemption. In numerous instances, both before and after the decisions of the Court, no certificate of tax exemption was filed. Lands that might have been certified as tax exempt were assessed for taxes and later sold. Thereafter, under the decisions, either the Government or the Indian could sue to set aside the tax deed and recovered the land on the grounds that it was, in fact, tax-exempt. In a suit brought by the holder of a tax title to quiet his title, the defense of tax exemption could be successfully interposed. The Government or the Indian was permitted for the first time in such a suit to assert the tax-exempt status of the land. Clearly, the purpose of Section 6(b) of the Act of 1947

was to effect a change in the law as announced by the Courts. In said Section the specific provision is inserted that the right to tax exemption shall terminate unless a tax exemption certificate is filed within two years from the effective date of the Act. No such tax exemption certificate was filed in this case. In my judgment, the proper construction of the Act is that upon the failure to file the tax exemption certificate, the land ceases to be tax-exempt and the right of the Indian to claim that it is tax-exempt terminates. To hold otherwise would fail to stabilize those titles that had been sold during the time intervening between the Act of 1928 and the Act of 1947. There is no question but that it was within the power of Congress to enact such legislation.

10. Plaintiff is entitled to judgment quieting his title.

The Attorney for the plaintiff will prepare appropriate decree in conformity with the foregoing Findings of Fact and Conclusions of Law and present to the Court for signing and entry at Muskogee, Oklahoma, on the 19th day of May, 1952.