Winnie COLBERT, now Brians, Plaintiff in Error,

v.

C. W. ROODHOUSE, Defendant in Error.

No. 35987.

Supreme Court of Oklahoma.

Nov. 9, 1954.

Rehearing Denied Jan. 7, 1955.

Application for Leave to File Second Petition for Rehearing Denied Feb. 1, 1955.

350

Carloss Wadlington, Ada, for plaintiff in error.

Harrell & Trice, Ada, for defendant in error.

O'NEAL, Justice.

This appeal presents two questions of law: First, was the 20 acre tract of land here involved subject to taxation for the years 1939, 1940 and 1942; and second, if the land was taxable is plaintiff's cause of action barred by Subsections (3) and (6) of Sec. 93, Title 12 O.S.1951? The court below answered both questions in the affirmative.

The present action was commenced on July 18, 1952, in the District Court of Pontotoc County, Oklahoma, by Winnie Colbert as plaintiff against C. W. Roodhouse as defendant, and the parties here retain the same positions and will be designated as plaintiff and defendant as in the trial court.

On December 5, 1908 plaintiff acquired by patent to the 20 acre tract described as the South Half (S½) of the Northwest Quarter (NW¼) of the Northeast Quarter (NE¼) of Section Twenty Eight (28), Township Two (2) North, Range Six (6) East, Pontotoc County, Oklahoma, as a portion of an allotment of lands made to her as one of seven-eighths degree of Indian blood, theretofore enrolled as a citizen of the Chickasaw Nation enrolled opposite Roll Number 52 on the approved final roll of minor Chickasaws.

In her first cause of action plaintiff alleged that the defendant claimed some title and interest in the land described by reason of a resale tax deed dated May 12, 1943, issued by the County Treasurer of Pontotoc County, Oklahoma on said date to the defendant, and that said tax deed was recorded on May 12, 1943; that the resale of said land for taxes and the deed so issued is void as the land was exempt from taxation under the laws of the United States; that the defendant has been in the unlawful possession of said land for six years next preced-

ing the filing of plaintiff's petition during which period defendant has occupied the land, taken the rents and profits and has excluded plaintiff from the possession thereof. Plaintiff's prayer is for possession of the land, a decree quieting title thereto, and for rents and profits.

Plaintiff's second cause of action is based upon the following allegations: That she was allotted 100 acres of land as her homestead, which allotment does not include the 20 acres here involved; that she was also allotted 125 acres of land as a surplus allotment; that the 20 acre tract of land here involved was included in her surplus allotment; that a tax exemption certificate covering 160 acres of her allotted lands was issued to her on May 28, 1929, which certificate was approved by the Secretary of Interior on May 23, 1930, and thereafter recorded in the office of the County Clerk of Pontotoc County, Oklahoma on June 26, 1930; this certificate, which designated lands exempt from taxation did not include the 20 acre tract here involved.

That after the approval of said tax exemption certificate by the Secretary of the Interior, and on November 1, 1930, the Secretary of the Interior entered his order removing restrictions on plaintiff's surplus allotment effective with date of plaintiff's deed in compliance with the directions of the Secretary; that plaintiff thereafter, and on January 10, 1931, sold 20 acres of her allotted land to Chas. T. Bates, and on March 13, 1931, plaintiff sold 80 acres of her allotted land to P.A. Norris, said sales being made with the Secretary's approval. These sales covered land in Sections 14 and 23, Township 1 North, Range 6 East, but did not include the 20 acre tract located in Section 28, in Township 2, here involved; that after the sales to Bates and Norris, plaintiff remained the owner of only 125 acres of her original allotment which 125 acres included the 20 acre tract involved in the present action. Upon these allegations the plaintiff contends that it became the duty of the Superintendent of the Five Civilized Tribes to file a supplemental exemption certificate substituting the 20 acres involved here for the tax-exempt lands theretofore sold.

Plaintiff also alleges that her failure to pay the tax on this 20 acre tract was occasioned by certain misinformation given by the County Treasurer of Pontotoc County, Oklahoma to the Superintendent of the Five Civilized Tribes as to the amount of taxes due on plaintiff's land for the years 1939 and 1940.

The answer of the defendant contains a general denial and a bar to the maintenance of the action based under the provisions of Title 12 O.S.1951 § 93, Subsections (3) and (6).

After the filing of the suit, and on the 18th day of July, 1952, plaintiff caused a notice to be served upon the Superintendent of the Five Civilized Tribes advising him of the pendency of the present action. Under date of September 19, 1952, the United States of America by its authorized attorneys, the United States Attorney for the Eastern District of Oklahoma, filed election of United States not to remove the cause to the Federal Court and filed a withdrawal of his former application for an extension of time within which to plead.

The defendant filed his motion for judgment on the pleadings and upon a hearing thereof the trial court entered judgment sustaining the motion and entered judgment for the defendant. The appeal is by transcript and is therefore reviewable by this court. Mires v. Hogan, 79 Okl. 233, 192 P. 811.

The first question to be resolved is whether the 20 acre tract of land was taxable for the years 1939, 1940 and 1942 under state law. Under 30 Stat. 495, commonly referred to as the Curtis Act, the lands designated as surplus allotments were not taxable for twenty one years from the date of the patent. The applicable portion of the Act provides: "All the lands allotted shall be nontaxable while the title remains in the original allottee, but not to exceed twenty-one years from date of patent, * * *." 30 Stat. 495, 507.

Plaintiff's allotment patent bears the signature of the Principal Chief of the Choctaw Nation under date of December 2, 1908, and the signature of the Governor of the Chickasaw Nation under date of December

5, 1908. In re Lands of Five Civilized Tribes (the 30,000 land suits) 10 Cir., 199 F. 811, it was held that the date of patent referred to in Sec. 16 of the Choctaw-Chickasaw Supplemental Agreement July 1, 1902, c. 1362, 32 Stat. 643, from which the periods of restriction were to run, was the date when the patent was signed by the second of the two chief executives of the tribes. The land therefore became taxable for the year 1930. The resale tax deed here involved covered delinquent and unpaid taxes for the years 1939, 1940 and 1942. The question thus posed is, whether restricted but taxable Indian lands in Oklahoma can be sold by the State for delinquent and unpaid ad valorem taxes as other lands in the State.

Section 4 of the Act of May 10, 1928, 45 Stat. 495 and 496 provides in part:

"* * * that on and after April 26, 1931, the allotted, inherited, and devised restricted lands of each Indian of the Five Civilized Tribes in excess of one hundred and sixty acres shall be subject to taxation by the State * * in all respects as unrestricted and other lands * * *."

Construing the foregoing Federal Statute the Circuit Court of Appeals, 10th Circuit, in United States v. Hester, 137 F.2d 145, 147, held:

"Indians residing in Oklahoma are citizens of that State, and they are amenable to its civil and criminal laws. Their property, unless exempt, is subject to taxation in the same manner as property belonging to other citizens of that State. * * *

"Restrictions against alienation [of Indian lands], without more, do not render the restricted lands immune from the operation of the [state] taxing laws * * *.

"Restricted, but taxable, Indian lands in Oklahoma could be sold by state for delinquent ad valorem taxes as other lands in state. Act May 10, 1928, §§ 4, 5, 45 Stat. 496; 68 O.S.1941 §§ 382, 432b."

The principle of law announced in the Hester case, supra, is restated by the Circuit Court of Appeals, Tenth Circuit, in United States v. Board of County Commissioners of McIntosh County, Okl., 154 F.2d 600. It was there held:

"Where land of full-blooded Indian was restricted against alienation during his lifetime or prior to April 26, 1931, and Indian died in 1925 and land passed to his full-blooded wife and children, land was 'allotted land' within meaning of statute continuing to April 26, 1956 restrictions against alienation of land allotted to Indians, and land descended to Indian's full-blooded heirs subject to restrictions against alienation, and could not be taxed by Oklahoma so long as heirs did not own tax exempt land in excess of 160 acres. Act May 10, 1928, §§ 1, 2, 4, 45 Stat. 495, 496."

It is stated in the opinion that since the widow of Jones exhausted her right under the Act by designating as tax exempt other land aggregating 160 acres, her undivided interest in this land could not be selected for that purpose and therefore it became subject to taxation after April 26, 1931. But since none of the other heirs of Jones owned tax-exempt land in excess of 160 acres, including his or her undivided interest in this land, the undivided interests of such heirs in this land were exempt from taxation, even though no selection was made and no certificate of designation was executed and filed.

As we have seen as required by Section 4 of the Act of Congress of May 10, 1928, plaintiff, on May 28, 1929, designated lands in Sections 14 and 23 of Township 1 North, Range 6 East, Pontotoc County, Oklahoma consisting of 160 acres as tax-exempt as long as title remained in the allottee.

Plaintiff now claims that after she sold 100 acres of her tax-exempt land, after the removal of restrictions therefrom, to Bates and Norris in the year 1931, that it then became the duty of the Superintendent of the Five Civilized Tribes to file in her behalf a supplemental designation declaring nontaxable lands which had previously become taxable under the Act and on which she had waived her right of exemption.

As we understand plaintiff's argument she contends that notwithstanding she made the selection of 160 acres of land to be free from taxation as shown by her certificate of May 28, 1929, filed with the Department of the Interior, and which designation was approved by said Department, that her other nonexempt lands became exempt immediately after she sold a part of the 160 acres which she had originally designated as exempt land; that therefore the land here involved was exempt from taxation at all times, at least up to January 1, 1950.

To support this position plaintiff relies upon Zweigel v. Webster, D.C.E.D.Okl., 32 F.Supp. 1015, and Board of Commissioners of Marshall County, Okl., v. United States, 10 Cir., 152 F.2d 540.

In the Zweigel case, supra, the Indian owners, the full-blood heirs of the allottee, never filed a designation of land to be tax-exempt as provided by Section 4 of the Act of May 10, 1928, 45 Stat. 495, nor did the Superintendent of the Five Civilized Tribes file such a designation in their behalf. All that the Zweigel case decides is that the failure of the full-blood heirs of the allottee and the failure of the Superintendent of the Five Civilized Tribes to file a designation in their behalf does not deprive the land of its nontaxable character for the reason there is nothing in the Act of Congress which makes the lands taxable in the event of their failure to act. The cited case in our view does not decide the case presented by the record now before us for the simple reason that the allottee here did make a designation of 160 acres of her allotment as land exempt from taxes.

To resolve the question as to when the exempt land owned by an Indian of the Five Civilized Tribes loses its exempt character from taxation by failure to so designate it, or the failure or the neglect of the Superintendent to act, Congress deemed it expedient to enact Subsection (b) of Section 6, Act of August 4, 1947, Chapter 458, 61 Stat. 731, 733, which subsection of the Act provides:

"All tax-exempt lands owned by an Indian of the Five Civilized Tribes on the date of this Act shall continue to be tax-exempt in the hands of such Indian during the restricted period: Provided, That any right to tax exemption which accrued prior to the date of this Act under the provisions of the Acts of May 10, 1928 (45 Stat. 495), and January 27, 1933 (47 Stat. 777), shall terminate unless a certificate of tax exemption has been filed of record in the county where the land is located within two years from the date of this Act."

It is here conceded that the plaintiff did not file a certificate of tax exemption within the two year period of limitation from the effective date of the Act of August 4, 1947.

Plaintiff argues that her failure to make a further designation of nontaxable land does not bar her under the provisions of Section 6(b) of the Act of Congress of August 4, 1947, supra, for the reason that if she did not make such additional selection, that it was the duty of the Superintendent of the Five Civilized Tribes under the Act of May 10, 1928, and the Act of August 4, 1947, to make such a designation in her behalf.

In Bridges v. Stick, 106 F.Supp. 506, the United States District Court E.D. Oklahoma, held:

"Under 1947 federal statute, providing that rights accruing before date thereof to tax exemption of lands owned by Indians of Five Civilized Tribes under previous acts, requiring filing of tax exemption certificates merely for state's convenience and not as condition precedent to right of tax exemption, shall terminate unless such a certificate is filed of record in county wherein lands are located within two years after such date, land owned by such Indians ceased to be tax exempt on failure to file such a certificate within statutory time, so that they and United States were precluded from asserting claims to land as tax exempt in action by grantee in resale tax deed of land to quiet title thereto. Act May 10, 1928, 45 Stat. 495; Act Jan. 27,

1933, 47 Stat. 777; Act Aug. 4, 1947, § 6(b), 61 Stat. 731, 25 U.S.C.A. § 355 note."

So far as our search has led we have not found any decision of either a United States District Court or an Appellate Federal Court giving the Act of August 4, 1947, a contrary construction. We think the construction thus placed upon the Act comports with the intention of Congress to limit the time within which the restricted Indian may raise the question of the taxability of his restricted land. Any other construction would defeat the evident purpose of the amendment.

We are of the view that the Board of County Commissioners of Marshall County, Okla., v. United States, supra, does not support plaintiff's contention that the 20 acre tract is not taxable.

In the Marshall County case, supra [152 F.2d 542], the allottee owned 94.25 acres which he designated as his homestead. He also owned 10 acres as a surplus allotment. He filed his designation in 1929, covering the homestead land. Thereafter, in 1943, the Superintendent of the Five Civilized Tribes filed a designation for him covering the 10 acres of his surplus land. This 10 acre tract had been placed upon the taxable rolls and sold for nonpayment of the ad valorem state tax assessed against it. The United States made the contention that the 10 acre tract was not subject to the state tax because the allottee's homestead and surplus land only equalled 104.25 acres; whereas, the allottee under the Act of May 10, 1928, was entitled to have land equal to 160 acres tax-exempt, and that this right could not be denied the allottee by his failure or neglect to file the designation to preserve his right of tax exemption on any part of his land. The court there said:

"We think it is fair to conclude that Congress assumed such designations would be made, either by the Indians or the Superintendent, prior to April 26, 1931, but we do not think Congress intended that where the Indian failed to file a designation within two years from May 10, 1928, and the Superin-

tendent failed to file seasonably a designation for such Indian, consent should be regarded as given by Congress to tax restricted lands not in excess of 160 acres or that the Indian should lose his exemption."

The Marshall County case was decided prior to the Act of Congress of August 4, 1947, which limits the time to two years from and after August 4, 1947, within which the designation for tax exemption must be filed.

 We conclude that under Section 4 of the Act of May 10, 1928, 45 Stat. 495, 496 that the allotted land of the plaintiff in excess of 160 acres was subject to the state ad valorem tax. When the plaintiff on May 28, 1929 made her selection of the 160 acres as nontaxable land, she thus obtained full benefit of the Act and exhausted her full right thereunder; therefore, the 20 acres involved in the present suit could not thereafter be selected as additional nontaxable land. Moreover, we hold that under the record in this case the plaintiff is barred from maintaining her action by reason of the enactment of Subsection (b) of Section 6 of the Act of August 4, 1947, Chapter 458, 61 Stat. 731.

The remaining question: Is the plaintiff's cause of action barred by Subsections (3) and (6) of Section 93, Title 12 O.S.1951?

Under the last quoted statute plaintiff's action is barred by limitation unless the statute is inoperative by reason of the Acts of Congress, supra.

 Plaintiff alleged that the defendant entered into posession of the 20 acre tract under a tax deed issued and recorded as of May 12, 1943, and that defendant's possession and occupancy continued for a period of six years prior to the filing of her petition. Plaintiff's action therefore is barred under the express provisions of the statute, supra. See Woods v. Phillips Petroleum Co., 207 Okl. 490, 251 P. 505, and Williams v. Bailey, Okl., 268 P.2d 868, and Sarkeys v. Scott, Okl., 269 P.2d 779, not yet reported in State Reports.

The judgment of the trial court is therefore affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and CORN and DAVISON, JJ., concur.

WILLIAMS, J., concurs in part and dissents in part.

WELCH, ARNOLD and BLACKBIRD, JJ., dissent.

WILLIAMS, Justice (specially concurring in part and dissenting in part).

I concur in the result reached in the majority opinion because plaintiff's petition shows on its face that it is barred by the statute of limitations, 12 O.S.1951 § 93. The trial court therefore properly sustained the demurrer to plaintiff's petition. In my opinion that is all that needs to be said in this case. The majority opinion, however, goes ahead to determine that the land in question became taxable for the year 1930 and was taxable for the years 1939, 1940 and 1942, and further, that plaintiff is barred from maintaining this action by reason of subsection (b) of section 6 of the Act of Congress of August 4, 1947, 61 Stat. 731. In my opinion these conclusions are not only unnecessary to the proper disposition of this case, but are completely erroneous.

The land in question was a part of the surplus allotment of plaintiff, Winnie Colbert, a 7/8ths blood Chickasaw Indian. The effective date of the allotment patent was December 5, 1908. Plaintiff's allotment was therefore not effective until after the effective date of the Act of Congress of May 27, 1908, 35 Stat. 312, which provided in pertinent part as follows:

"That from and after sixty days from the date of this Act the status of the lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrance, be as follows: * * * all allotted lands of enrolled full-bloods and enrolled mixed-bloods of three-quarters or more Indian blood, including minors of such degrees of blood, shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance

prior to April twenty-sixth, nineteen hundred and thirty-one, * * *."

Since plaintiff is an enrolled, mixed blood of more than three-quarters Indian blood, the effect of this act was to make her entire allotment absolutely restricted and tax exempt until April 26, 1931. Marcy v. Board of Com'rs of Seminole County, 45 Okl. 1, 144 P. 611; Board of Com'rs of Marshall County v. U. S., 10 Cir., 152 F.2d 540; United States v. Rickert, 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532; Zweigel v. Webster, D. C., 32 F.Supp. 1015.

The first time that any restricted land was made taxable while at the same time remaining restricted was on April 26, 1931, by virtue of the provisions of the Act of Congress of May 10, 1928, 45 Stat. 495, which provides in pertinent part as follows:

"That the restrictions against the alienation, lease, mortgage, or other encumbrance of the lands allotted to members of the Five Civilized Tribes in Oklahoma, enrolled as of one-half or more Indian blood, be, and they are hereby, extended for an additional period of twenty-five years commencing on April 26, 1931: * * *.

"Sec. 4. That on and after April 26, 1931, the allotted, inherited, and devised restricted lands of each Indian of the Five Civilized Tribes in excess of one hundred and sixty acres shall be subject to taxation by the State of Oklahoma under and in accordance with the laws of that State, and in all respects as unrestricted and other lands * * *."

Thus it may be seen that this act extended the restricted and tax exempt character of plaintiff's allotment to April 25, 1956, except that it removed the tax exemption from that portion of plaintiff's allotment in excess of 160 acres on April 26, 1931. The record reveals, however, that on April 26, 1931, plaintiff only owned 125 acres of restricted allotted land, including that portion of her allotment in controversy here. All of this land therefore remained tax exempt under the Act of Congress of May 10, 1928, supra, and could not

have been subjected to taxation for the years 1939, 1940 and 1942 as held in the majority opinion. Board of Com'rs of Marshall County v. U. S., supra [152 F.2d 542]. In that case the court said:

"Congress gave its consent to the state to tax restricted lands of Indians of the Five Civilized Tribes in excess of 160 acres. Where such an Indian owned only 160 acres or less of restricted land, Congress did not consent to the taxation of any part thereof."

I further dissent from the holding of the majority that the Act of Congress of August 4, 1947, 61 Stat. 731, bars plaintiff's action here. There is nothing in that act which in any way changes the tax-exempt character of the land in question for the years 1939, 1940 and 1942, even if such a thing could constitutionally be done, which I doubt. The pertinent part of this act is section 6(b) thereof, which provides:

"All tax-exempt lands owned by an Indian of the Five Civilized Tribes on the date of this Act shall continue to be tax-exempt in the hands of such Indian during the restricted period: Provided, That any right to tax exemption which accrued prior to the date of this Act under the provisions of the Acts of May 10, 1928 (45 Stat. 495), and January 27, 1933 (47 Stat. 777), shall terminate unless a certificate of tax exemption has been filed of record in the county where the land is located within two years from the date of this Act."

Thus it may be seen this act specifically continued the tax-exempt character of plaintiff's allotment, but made the continuance of such tax exemption past August 4, 1949, contingent upon the filing of a tax exemption certificate by that time. The act specifically says that such tax exemption *shall terminate*. It does not say that the tax exemption of the land prior to that time shall be lost or changed in any way. Neither does it say anything which could be construed as a sort of statute of limitations on the right of plaintiff to contend that the land in question was tax exempt for years prior to the passage of the act. The only effect that this act had on plaintiff's allot-

ment was to terminate the tax exemption thereof on August 4, 1949, because of plaintiff's failure to file a tax exemption certificate by that time. It has no bearing on the question of the taxability of the land in question for the years 1939, 1940 and 1942 at all.

I am of the opinion that the trial court's judgment was correct because plaintiff's petition shows on its face that defendant had been in the adverse possession of the property for more than five years, even though only claiming under a void tax deed, and plaintiff's cause of action is therefore barred by the statute of limitations. This is true because section 2 of the Act of Congress of April 12, 1926, 44 Stat. 239, specifically provides that the statutes of limitations of the State of Oklahoma are applicable to restricted Indians of the Five Civilized Tribes. To that extent I therefore concur in the majority opinion, but otherwise, I respectfully dissent.